## TEXAS BUILDING & MORTGAGE CO. et al. v. ROSENBAUM.

### No. 11255.

Court of Civil Appeals of Texas. Galveston.

Oct. 30, 1942.

On Motion for Rehearing Jan. 29, 1942.

Further Rehearing Denied Feb. 19, 1942.

Edgar C. Soule and Pierce E. Holmes, both of Houston, for appellants.

W. Gordon Vaughan, of Houston, for appellee.

CODY, Justice.

This suit was instituted in the district court of Harris County to rescind a contract alleged to have been induced by fraud, and the suit was also to cancel a note given pursuant to said contract, and to recover money paid pursuant thereto.

The jury's findings as to the facts are these:

1. That at or before the time the plaintiff, Mrs. Ida Rosenbaum, bought from the defendant Miller the stock and bonds of the Texas Building & Mortgage Company, Miller represented to her that she could obtain cash for said stock and bonds from said company at any time.

7. That at and before the time plaintiff, Mrs. Ida Rosenbaum, bought from the defendant Miller the aforesaid stocks and bonds, he represented to her the same were secured by the Federal Housing Administration.

13. That at and before the time plaintiff, Mrs. Ida Rosenbaum, bought from defendant Miller the stock and bonds aforesaid, said Miller represented to her that the same were secured by a First Deed of Trust upon Houston real estate.

19. That at and before the time plaintiff, Mrs. Ida Rosenbaum, bought from defendant Miller the aforesaid stocks and bonds, he represented to her that there was in cash in the treasury of said Company the sum of $250,000 with which to redeem said stocks and bonds.

In connection with the jury's finding as to representations made by defendant Miller to Mrs. Rosenbaum set forth as aforesaid numbers 1, 7, 13, and 19, the jury made the supporting findings to the effect, in each instance, that Mrs. Rosenbaum believed such representations, and relied upon them, and but for same would not have bought said stocks and bonds, that such representations were false, and were known by said Miller to be false.

25. That plaintiff, Mrs. Ida Rosenbaum, paid to defendant Miller for the bonds of the Texas Building & Mortgage Company the sum of $2,500.

26. That Mrs. Ida Rosenbaum, upon her promissory note made payable to D. F. Miller in the sum of $2,500, paid the sum of $2,400.

27. That Mrs. Ida Rosenbaum received from the defendant, Texas Building & Mortgage Company, as dividends on the stock and interest on the bonds in question, the sum of $569.59.

28. That Mrs. Ida Rosenbaum discovered the falsity of the representations made to her by defendant Miller on June 13, 1938.

The verdict was received by the court, and the court found that it was undisputed that plaintiff Mrs. Ida Rosenbaum purchased ten shares of preferred stock of the Texas Building & Mortgage Company from defendant Miller for which she paid him in cash $500 after the representations, as found by the jury, had been made. The court further found that Mrs. Rosenbaum had received from defendant Miller on October 5, 1937, the sum of $1,000. The court found that the stock and bonds were purchased by the plaintiff, Mrs. Ida Rosenbaum, prior to December 31, 1936; and found further that at all times material, Miller was president of the defendant Texas Building & Mortgage Company, and that in all dealings with Mrs. Rosenbaum, he acted as agent of said Company; also that at all times material, the stock and bonds of Texas Building & Mortgage Company were worthless. Upon the aforesaid verdict and the court's findings, the court rendered judgment that the purchase of the stock and bonds be rescinded, and cancelled the $2,500 note given Miller by Mrs. Rosenbaum and that she recover the sum of $4,842.41, from Miller and Texas Building & Mortgage Company, jointly and severally. The court required the return to said defendants of the stock and bonds in question and rendered judgment that plaintiff, Mrs. Ida Rosenbaum, take nothing as against the defendant, P. Townsend.

The first point appellants raise is that it appears that the husband of plaintiff, who was living with her at the time of the trial, joined in this suit only pro forma, and that he is not mentioned in the judgment, and that the failure to make him a real party to the suit constitutes a fundamental error apparent upon the face of the record and presents reversible error. We overrule such contention. It is undoubtedly true, as appellants contend, that a wife is not, and a husband is, a necessary party in a suit for community property. But appellants make no claim that they raised this point in the trial court, and where a case is tried on the theory that the plaintiff is seeking to recover in her separate right, the natural presumption is that the facts were such as would authorize and support the theory upon which the case was tried. The judgment in the case does not expressly state that plaintiff should recover in her separate right, but it recites that

Mrs. Rosenbaum "joined pro forma by her husband, F. W. Rosenbaum, is plaintiff * * *", and she could lawfully recover as plaintiff in a suit where her husband was a mere formal party only upon her separate right. The judgment itself recites: "And it appearing to the court from the evidence and verdict of the jury that the plaintiff, Mrs. Ida Rosenbaum, is entitled to recover from defendant * * *", etc. This recital, taken with the rest of the judgment, is a finding that Mrs. Rosenbaum was the only real party at interest, and that she recovered in her separate right, and that Mr. Rosenbaum was a party to the suit only in the right of his wife. His joining in the suit as a formal party was not a mere nullity. It constituted an authorization on his part that his wife should sue for and recover in her own right the recovery sought in said petition. Certainly in the face of the pleading and judgment in this case he would be estopped from ever asserting any real interest in the subject-matter of the suit. The evidence in the case shows Mrs. Rosenbaum had reached years of discretion before she married, being forty-five, and having prior to such marriage inherited money and land from her deceased parents, as well as having earned money. Her testimony was that it was agreed before she married that she should continue to own all the money that she earned as well as the money which she inherited. Of course the agreement that her earnings should be her own was not enforceable. But there is nothing morally reprehensible about a husband consenting that his wife shall have what she earns. And where it is established that he has consented the earnings of his wife shall be her own, her dealings thereafter with money which she has earned, with his knowledge, may be such as will support a finding that he had in fact given such money to her—that is to say, a gift from a husband to his wife may be inferred from circumstances and dealings and does not have to be proved up by a written deed of gift. And where, additionally, the husband joins pro forma in a suit brought by his wife to recover money which he stated should be hers, the inference of a gift is practically conclusive. However, in support of the court's judgment it would, if necessary, be inferred that this money belonged to Mrs. Rosenbaum before she married. When asked about her earnings during different years she testified: "Sure,

I don't remember and can't estimate it, but I know all the money from the beginning was mine before I married, and I told you it was the agreement that it stay all in my name, what I had, that it was all mine. I worked for it and he agreed it should stay mine." This tends to establish that the money was appellee's because it belonged to her before marriage. The defendants dealt with Mrs. Rosenbaum upon the basis that she was dealing with her separate property, her husband dealt with the subject matter of the suit by becoming a formal party upon the basis that the transaction affected only her separate property, and Mrs. Rosenbaum dealt throughout the transaction and suit as though she were dealing with her own separate property. We cannot hold that the court was in error in rendering judgment accordingly. Neither of the parties have cited cases sufficiently in point to be here controlling. But in the last analysis the point is merely whether the pleading and proof is here sufficient to authorize Mrs. Rosenbaum to recover from defendants as plaintiff, her husband being merely a formal party to the suit.

Appellants' next contention is that appellee by her conduct has waived the right to rescind the contract to purchase the bonds and has elected to stand upon an action for damages.

The jury found that appellee discovered the facts which entitled her to rescind on June 13, 1938. Appellants point out that the evidence shows that appellee received a check for $150 payment on her bonds on July 21, 1938, which she accepted and with full knowledge of the facts which gave her a right to rescind, and that, as the jury found in response to special issue No. 27, she received as interest and dividends upon the bonds the sum of $569.59. Also, that at the trial she answered "Yes" to the question: "Nobody else has any claim on that stock except you, you are the sole owner?" As further supporting their contention that appellee had waived her right to rescind, and had elected to stand on an action for damages, appellants point out that she filed her suit for rescission on September 8, 1938, but thereafter on October 6, 1938, obtained a temporary injunction which had the effect of tying up the bank account and other assets of appellant Texas Building & Mortgage Company, and that, in her application therefor, she stated

she was a stockholder in said corporation; and further, that she obtained other temporary writs of injunction, and upon the trail testified:

"Q. You authorized Mr. Vaughan (her lawyer) to file an application for an injunction against these folks, didn't you, to close up their safe? A. Sure.

"Q. And tie up their safety deposit vault? A. Sure.

"Q. And tie up their bank account? A. Sure."

We are unable to see how the foregoing evidence can be held, as a matter of law, to constitute a waiver of her right to rescind the contract to purchase bonds and cancel her notes, and an election to pursue an action for damages. As appellants have pointed out, she filed her suit for rescission on September 8, 1938. This action, when prosecuted to judgment, would constitute an election to rescind, and whatever relief which she may have sought in this suit, whether by injunction or otherwise, in support of this action, can hardly be accurately described as constituting a waiver of this suit. If, as appellants state, an action for rescission is but an alternative remedy to an action for damages, of course the mere filing of the action for rescission did not of itself constitute an irrevocable election. In the case of Seamans Oil Co. v. Guy, 114 Tex. 42, at page 45, 262 S.W. 473, 474 the court said:

"The doctrine of estoppel by election of inconsistent rights or remedies does not seem to have been extensively discussed by the courts of this state, and there is some confusion in the decisions. While the courts of our state have not clearly recognized it, yet there is an important distinction between an election of rights and an election of remedies. One is a choice between inconsistent substantive rights, while the other is a choice between forms of action or procedure. The general rule seems to be this:

" 'If one having a right to pursue one of several inconsistent remedies makes his election, institutes suit, and prosecutes it to final judgment or receives anything of value under the claim thus asserted, or if the other party has been affected adversely, such election constitutes an estoppel thereafter to pursue another and inconsistent remedy. And where the right in the subsequent suit is inconsistent with that set up in the former suit, as distinguished from a merely inconsistent remedy, the party is estopped though the former suit may not have proceeded to judgment. But where the inconsistency is in the remedies it is generally considered that there is no estoppel where the former suit was dismissed without trial or before judgment.' 10 R.C.L. 703, 704."

Nothing, therefore, which was done by appellee in the prosecution of her suit for rescission, for the obvious purpose of obtaining a judgment of rescission therein, can be urged as a waiver of said remedy. It might be, of course (and we do not pass on the point), that her applications for temporary injunctions were improper as being inconsistent with the remedy of rescission which she sought; and had appellants appealed the orders granting same it might have been found that issuing such orders presented error. But we have no such situation before us. And the temporary injunctions, with reference to which no error is assigned, obtained by appellee in the prosecution of her suit for rescission, cannot be held to constitute a waiver of the remedy of rescission. Whether the appellee was the owner of the stock at the time of the trial, as she stated she was in reply to appellants' question, may present a question of law; and her answer was her opinion on that question. What she conceived to be the facts were alleged in her petition wherein she sought to have her contract of purchase rescinded. At the time she was asked the question, from the standpoint of law, she was the owner of the stock; but if she proved the allegations of her petition, then, in equity, at the time she was asked the question, she was not the owner of the stock. But any statement which she made in the prosecution of her suit for rescission of the contract of purchase of the stock and bonds that she was the owner thereof must be considered and construed in the light of the allegations of the petition asking in effect that she be divested of the legal title thereto. There is nothing in the record before us which appellee did, after she filed her petition for rescission on September 8, 1938, which we can hold, as a matter of law, constituted a waiver of her action for rescission. The jury found that one of the frauds practised on appellee was the representation that she could get her money on the stocks and bonds at any time (Special Issue No. 1).

Her attempt to get her money on the stock and bonds after she presented them to appellants was a tender back of the stock and bonds, and she then discovered that appellants would not accept a tender. Of course she also formally tendered same in her pleadings. We cannot sustain appellants' contention that by accepting the check for $150 in July, 1938, after she had discovered the fraud which had been perpetrated on her, that appellee thereby affirmed the contract, or that by failing to tender back the $569.59 (inclusive of the $150), which she received as dividends and interest on the stock and bonds, she was thereby precluded from the remedy of rescission. Irrespective of whether appellee was entitled to the remedy of an action for damages, or an action for rescission, appellants owed her much more than the sum of $569.59. That it was sufficient to tender appellants back the stock and bonds and a credit of the money she had received from appellants in order to entitle appellee to rescission is elementary.

Appellants have cited numerous cases in support of the proposition that where a plaintiff retains what he obtained by a contract obtained by fraud, and continues to use and enjoy same after he has discovered the fraud which has been practised upon him, that this constitutes an affirmance of the contract and he may not thereafter disaffirm the contract and seek to rescind it. As we do not consider that this principle, which is established law, is here applicable, it would be superfluous to review such cases.

While appellants placed other propositions in their brief, they failed to support them with any statements of fact, arguments, or authorities, and are taken to have abandoned them.

Finding no reversible error, the judgment of the trial court is affirmed.

Affirmed.

On Appellants' Motion for Rehearing.

Article 1983, Vernon's Ann.Civ. Stats., provides that the husband may sue either alone or jointly for the recovery of the property of the wife, and that she may sue alone by authority of the court if he fails to join. In order to sue alone, it is held that she must allege and prove that her husband has failed and neglected to prosecute such suit or join her in the prosecution thereof, and must specifically allege facts which show the property sought to be recovered belongs to her. Newell v. State, Tex.Civ.App., 103 S.W.2d 194. The fact that the husband joins pro forma, it is held, will not satisfy the statute, and is the equivalent of the wife suing alone. Id. We concluded on original hearing that where the husband was joined in the suit, even pro forma, that it should be held that he sued jointly for the purposes of the statute, and that the point was too technical to justify a reversal. We are constrained to hold on rehearing that we were in error, and the appellants sufficiently raised the point by urging a general demurrer which should have been sustained.

It is manifest that the husband was joined only pro forma in this case, and that appellee's position to the contrary is untenable.

The judgment of the trial court must therefore be reversed and the cause remanded for a new trial.

Appellants' motion for rehearing is granted, the former judgment set aside, the trial court's judgment is reversed, and the cause remanded for a new trial.