Catherine F. Wagoner v. Commissioner.
Wagoner v. Commissioner
Docket No. 13520.
United States Tax Court
1948 Tax Ct. Memo LEXIS 242; 7 T.C.M. (CCH) 130; T.C.M. (RIA) 48029; February 27, 1948
George S. Atkinson, Esq., Dallas Nat. Bldg., Dallas, Tex., for the petitioner. A. T. Akin, *243 Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: This case involves an income tax deficiency of $3,198.30 for the calendar year 1943. The year 1942 is also involved in so far as it affects computation of the tax liability for 1943 pursuant to the Current Tax Payment Act of 1943. The questions presented are: (1) Did the sum of $4,000 paid by petitioner to her husband in each of the taxable years constitute a reasonable allowance for services rendered by him in connection with her separate property? (2) In the alternative, is petitioner entitled to a deduction of $4,000 in each of the taxable years as a non-trade or non-business expense under section 23 (a) (2), I.R.C.? (3) Is the $4,000 received by petitioner's husband in each year community income? (4) For the years 1942 and 1943, is petitioner entitled to deductions of the entire amount of her share of a net loss sustained by a partnership of which she was a member and of losses sustained by restaurant business operated by her as individual proprietor? The remaining issue raised by the pleadings, involving the right of petitioner to compute her *244 income tax under the alternative tax method provided in section 117 (c) (2), I.R.C., has been conceded by the respondent. Findings of Fact Petitioner is a resident of Las Vegas, Nevada. During the taxable years she and her husband, Paul C. Wagoner, were residents of Dallas, Texas, and their separate income tax returns for those years were filed, on a community property basis, with the collector of internal revenue at Dallas. At the time of her marriage in 1932, petitioner owned a substantial separate estate, including rental properties, investments, and an undivided 2/9ths interest in 280 acres of land situated in the State of Oklahoma containing zinc and lead deposits. The interest in land in Oklahoma was acquired by petitioner by inheritance. For a short period she also owned a 2/9ths interest in twenty acres of this land, which she purchased with her separate funds. The mines in which petitioner had an undivided 2/9ths interest had been under lease and producing for thirty years and she had been receiving royalties for fifteen years or longer. The remaining 7/9ths of the leases were owned by her mother, brother and sisters, who employed attorneys to *245 look after their interests. No major mining lease expired in 1942 or 1943. All of the leases had been entered into prior to those years and ran from five to ten years. For the years 1942 and 1943, petitioner included in her separate income in her returns royalties from zinc and lead produced from the above mentioned lands in the net amounts of $29,014.73 and $32,417.19, respectively. During each of the years 1936 to 1941, inclusive, petitioner paid her husband a salary of $8,000 per year for services rendered in connection with her separate estate, claiming a deduction of this amount on her separate income tax returns. The Bureau of Internal Revenue allowed petitioner the claimed deduction for each of the years 1936 to 1938, inclusive, but disallowed $4,000 of the amount claimed for each of the years 1939 to 1941, inclusive. The Bureau held that $4,000 constituted reasonable compensation for each of the latter years and petitioner's tax liability for those years was determined on this basis. Paul C. Wagoner entered the Army of the United States in March 1941, and was released therefrom about October 1941. In the latter part of January 1942 he went back into the Army and served *246 therein during the remainder of 1942 and all of 1943. From approximately February to July, 1942, he was in Hawaii, and during the remainder of that year he was stationed at Fort Francis E. Warren, Wyoming, for three or four months and at San Antonio for two months. In 1943, he was stationed at Fort Warren, Wyoming, Vancouver Barracks, Washington, on Oregon maneuvers, and at Camp Adair, Oregon. During a part of the year 1942 petitioner was in the restaurant business in Dallas, Texas, in partnership with another individual, having invested her separate funds in this business, which operated at a loss. During the remainder of 1942 and during 1943 petitioner was in the restaurant business as an individual proprietor, the investment being from her separate funds, and this business also sustained operating losses. As a member of the partnership, petitioner's share of the partnership loss in 1942 was $115.33; and the losses sustained by the business operated as an individual proprietor amounted to $1.392.42 in 1942 and $8,128.32 in 1943. She claimed these as separate losses on her separate income tax returns for the years 1942 and 1943. Respondent has disallowed one-half of each of the *247 losses claimed on the ground that they were community losses. It was agreed between petitioner and her husband that he was to be paid and he was paid $4,000 for each of the years 1942 and 1943 for services rendered in connection with her separate estate. This compensation was deposited in his bank account and used for family expenses. With the exception of the restaurant business, which was operated by managers employed by petitioner, her husband handled her business affairs during 1942 and 1943. When his service in the Army permitted, he handled them in person. When not, he handled them by correspondence, or by telephone or telegraph. During these years, he counseled petitioner in her investments of her separate funds in stocks and real estate, some of which proved profitable to her. In both 1942 and 1943, he made a trip to Joplin, Missouri, where the mines and headquarters of the mining companies operating petitioner's properties were located. While there he discussed some proposed changes in chat milling leases which resulted in amendments being made to these leases. He made several trips down into the mines to investigate a report that some supporting pillars had been taken *248 out which damaged the mines. A claim for damages was settled for $5,000 in 1942, and this amount was paid through the medium of increased royalties. During the time he was in the Army, an accountant employed by him received checks for royalties due to petitioner and made reports to him. He and the accountant handled controversies regarding the amount of Federal income taxes owed by petitioner for the years 1939 to 1942, inclusive, and attended conferences with Bureau of Internal Revenue officials. In the income tax returns filed for the years 1942 and 1943, petitioner claimed as a deduction for "management" expense the amount of $4,000 paid to her husband, and reported as income $2,000 of such amount as her share of community income. In the notice of deficiency the respondent disallowed for each of the taxable years the amount of $4,000 claimed as "management" expense and eliminated from income $2,000 reported as community income from such source, stating as reason therefor that: The expense claimed as salary to your husband in managing your separate property is disallowed since he devoted little time, if any, to this work in 1942 (and 1943). A reasonable allowance for services *249 rendered by Paul C. Wagoner for the petitioner in 1942 and 1943, is $4,000 for each year. Opinion The first question raised is whether petitioner is entitled to a deduction from gross income of $4,000, as reasonable allowance for salary or other compensation paid to her husband for personal services rendered to petitioner in connection with her separate property. The evidence having convinced us that petitioner's husband rendered substantial services to her in connection with the management of her separate property and that $4,000 constitutes a reasonable allowance for such services for each of the taxable years, we have made a finding to this effect which disposes of this issue, and renders it unnecessary to decide or discuss the alternative contention that petitioner is entitled to a deduction of $4,000 in each taxable year as a non-trade or non-business expense. The next question is whether the $4,000 paid by petitioner to her husband for services rendered constitutes community income, one-half of which is to be included in the gross income of each, or should it be treated as the sole and separate property of the husband and includible in his gross income in its entirety. *250 In Texas income earned by a husband for personal services is earned by the community and taxable one-half to each spouse. McLarry v. Commissioner, 30 Fed. (2d) 789. The evidence does not convince us that petitioner and her husband had any agreement between themselves, as petitioner urges, that the amounts she paid him for his services should be his own property and not that of the community, and we think it is quite significant that both treated the amounts the husband received for services as community income in both of the taxable years in their income tax returns. Even if it be assumed, however, that there was such an agreement, it would not be effective in Texas to change the husband's earnings from community income to separate income. See Texas Building & Mortgage Co. v. Rosenbaum (Tex. Civ. App., 1942), 159 S.W. (2d) 554; Barber v. Robertson (Tex. Civ. App., 1942), 161 S.W. (2d) 341. Petitioner cites a number of cases on brief supporting the proposition that payment by a husband to his wife of interest or rent for the use of her separate property becomes her separate property. Our problem is not whether interest or rent paid by one spouse *251 to the other for the use of separate property becomes separate property, but is whether income realized by a husband for his services becomes community income, or separate income of the husband. The law of Texas is that "the personal earnings of the husband during the marriage become community. Whatever arises from his labor and attention * * * is community." Law of Marital Rights in Texas, Speer, (3rd Ed.) 1929, Sec. 362, p. 443. Our conclusion is, therefore, that petitioner must include in her gross income, one-half of the $4,000 paid to her husband in each of the taxable years for his services. The remaining question relates to losses from the operation of the restaurant business claimed by petitioner as deductions in each of the taxable years 1942 and 1943. She contends that these losses were separate and not community losses, and that she is therefore entitled to the deduction of the entire amount of the loss sustained in each year. In her main brief she urges that since the bulk of her income has been treated as her separate income, and since those losses went to deplete her separate estate, she should be allowed to take them as a separate deduction. In her reply brief she *252 discusses G.C.M. 13,742, XIII-2, C.B. 181, in which it was held that if transactions involving separate property in Texas which give rise to gains or losses, employed the skill, labor or supervision of one or both of the spouses, such gains or losses are community gains or losses, and urges that we decide this issue in her favor on the ground that her "investment in the partnership known as 'Vick's Tropics' and later on 'The Tropics' created a loss in which the skill, labor or supervision of one or both of the spouses was not employed." In Middlebrook v. Zapp, 73 Texas 29, 10 S.W. 732, the Supreme Court of Texas held that where a wife contributes from her separate property to the original capital of a firm engaged in selling merchandise, and the stock is replenished from time to time, purchases being made for cash and on credit, the interest in the partnership held in the name of the wife becomes community property. In the cited case the business was conducted for two years "without profit". In Jones v. Epperson, 69 Texas 586, 7 S.W. 488, the same court held that if a married woman conducting a business buys goods, partly on cash and partly *253 on credit, making the cash payments out of her separate estate, and turning the proceeds of current sales into the business, the burden is on her to show what part was paid out of her separate estate, and, in the absence of proof to that effect, the whole is to be regarded as community property. See also Law of Marital Rights in Texas, Speer, 3rd Ed., sections 291 to 295, incl. The burden was on the petitioner to show that the respondent's determination that the losses sustained by her during the taxable years from the investment of her separate funds in the restaurant business were community and not separate losses, was erroneous. She has cited no cases in support of her contention that they were separate losses, and her argument that no skill, labor or supervision of either her husband or herself was employed in connection with the operation of the business is not supported by the evidence. The evidence is rather meager. It consists of testimony of petitioner's husband and income tax returns. Petitioner's income tax returns for 1942 and 1943, show that in 1942 she claimed a net loss from partnership of $115.33 and a net loss from business of $1,392.42, and that in 1943 she claimed *254 a net loss from business of $8,128.32. Schedules were attached to each of these returns showing the operating income and expenses of "The Tropics" restaurant which resulted in the losses of $1,392.42 and $8,128.32, and the 1943 return discloses that her original investment in the restaurant business was made in 1940. Her husband testified that she owned the Tropics Restaurant in Dallas, that it was acquired with her funds, and that she employed managers to do the actual work of operating the business. He also testified that when his service in the Army permitted him to be in Dallas he "would look into it, which was not too much of the time," and that in November 1942, when the dining room of the restaurant was damaged by fire, he assisted in the collection of $25,000 in insurance from the insurance company. This evidence amounts to little more than a statement that petitioner invested her separate funds in a restaurant business which she operated through managers, that she sustained losses from the operation of this business, and claimed these losses as deductions in her income tax returns. If this was all that was required, proving a separate loss under the laws of Texas would be *255 a comparatively simple matter. That it is not so simple is indicated in the following excerpt from the Law of Marital Rights in Texas by Speer, 3rd Ed., Sec. 293, wherein that oftquoted author says: "Merchandise, when purchased by the wife out of her own funds, of course, becomes her separate property, and she may sell the same for cash or on credit as she sees fit; and she may, provided she buys for cash and uses only her separate funds, replenish her depleted stock from time to time; and to this extent she may become a merchant either upon her own account or as a partner with another, for she has done nothing inconsistent with the disabilities of her coverture, nor of which any creditor of the husband or community can complain. She is in this respect only using her own as she has a right to do. But she cannot, for the purpose of replenishing her stock, make purchases on credit with the expectation of paying therefor out of the profits of the enterprise. Such purchases become community property and are immediately liable for the husband's debts. Indeed, the authorities tend to hold that purchases on credit by the wife necessarily become a part of the community estate, whether her *256 intention at the time of purchase be to make payment out of the community funds of herself and husband, or not. * * *" It well may be that if all the facts concerning petitioner's investment and the operation of the restaurant business were known, her interest in the partnership would have to be treated as community property and her share of the partnership loss a community loss under the rationale of Middlebrook v. Zapp, supra, and that, because of commingling of community funds with her separate funds, the losses resulting from the operation of the business as a sole proprietor would have to be treated as community losses under the rationale of Jones v. Epperson, supra. In any event, the evidence produced falls far short of that required to prove that the respondent's determination, that her losses from the investment of her separate funds in the restaurant business were community losses, was erroneous, and on this issue we hold for the respondent. Decision will be entered under Rule 50.