Ronald CHURCHWELL, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 91–CA–002365–MR.

Court of Appeals of Kentucky.

Oct. 23, 1992.

Rehearing Denied Jan. 8, 1993.

Mark Alan Posnansky, Appellate Public Advocate, Louisville, for appellant.

Chris Gorman, Atty. Gen. and Vickie L. Wise, Asst. Atty. Gen., Frankfort, for appellee.

Before HAYES, HUDDLESTON and SCHRODER, JJ.

HUDDLESTON, Judge.

Ronald Churchwell appeals from a Marshall Circuit Court judgment convicting him of Theft by Unlawful Taking Over $100.00 (KRS 514.030) and sentencing him to five years' imprisonment. Because the Commonwealth's closing argument violated Churchwell's right to due process, and because law enforcement officers obtained evidence of the theft as a result of an illegal stop, we reverse and remand.

At approximately 3:00 a.m. on May 29, 1989, Ron Reed, a Kentucky Park Ranger, observed a vehicle slowly cruising the marina area of Kentucky Dam Village State Park. Because the occupants of the car "didn't appear to be looking for anything in particular" and seemed suspicious, Officer Reed followed the vehicle and stopped it approximately four miles outside the park.

Officer Reed asked Douglas Irvan, the driver of the car, and Ronald Churchwell, his passenger, for proof of identification. Reed shined his flashlight into the automobile and saw a radar detector on the dashboard. After noting the type of radar detector, he allowed the men to go free.

Almost five hours later, Officer Reed received a report that a car had been broken into at Kentucky Dam Village. Upon investigation, Reed learned that the car's side window had been broken out with a piece of riprap.[1] Reed also learned that the radar detector reported stolen was the same type he had earlier seen in Irvan's automobile. While at the crime scene, Reed received a report that another car had been vandalized. As in the first case, the perpetrators used riprap to break the car window and steal a radar detector from inside.

Early the same morning, Officer Reed went to Irvan's house to investigate the incident, but Irvan was not there. Reed asked Irvan's father, who was there, if Irvan owned a radar detector. He replied that he did not know, but agreed to call the police when Irvan returned.

That night, the Irvans agreed to meet with law enforcement officers and bring the radar detector with them. After Irvan was read his rights, he told the police he had purchased the device and did not know anything about the theft. However, the owner of the radar detector subsequently identified the detector Irvan produced as the one stolen from his car earlier that day.

Later that evening, the police went to Irvan's home and arrested him for theft and for defacing an instrument. At the jail

---

**1.** "Riprap" is "a foundation or sustaining wall of stones thrown together without order (as in deep water or on an embankment slope to prevent erosion)." "Riprap" also defines the stones used for such purposes. *Webster's New Collegiate Dictionary* 992 (1979).

where he was taken he was again advised of his rights and questioned about the thefts. Irvan signed a statement saying he had broken the car window and had stolen the radar detector. He further said that Churchwell was not involved in the theft.

Approximately a month later, an attorney approached Officer Reed and presented him with Irvan's signed statement that both he and Churchwell were involved in the break-ins. As a result, Reed promised to recommend reduction of the charge against Irvan to Theft by Unlawful Taking Under $100.00 if he cooperated in the prosecution of Churchwell. Irvan agreed, and Churchwell was convicted. This appeal followed.

■ Churchwell argues that the trial court committed reversible error in failing to instruct the jury on criminal facilitation. The applicable statute, KRS 506.080(1) provides:

A person is guilty of criminal facilitation when, acting with knowledge that another person is committing or intends to commit a crime, he engages in conduct which knowingly provides such person with means or opportunity for the commission of the crime and which in fact aids such person to commit the crime.

Where, for example, one loans a car to another knowing it will be used to commit a robbery, he is guilty of criminal facilitation. *Adkins v. Commonwealth*, Ky. App., 647 S.W.2d 502, 505 (1982).

As we said in *Adkins*, "the trial court's duty to instruct on lesser included offenses arises only when the evidence would warrant a finding of guilt on the lesser included offense." *Adkins*, 647 S.W.2d at 505.

We do not believe the evidence in this case warrants a finding of guilt on criminal facilitation. At trial, Irvan testified that Churchwell suggested they "[get] some radar detectors." He then said that the two men gathered rocks from the side of the dam to shatter the car windows. He ex-

plained that Churchwell "busted the window out of the first car," then went to the next car while Irvan grabbed the radar detector. According to Irvan, Churchwell "busted the window out of [the second car] and reached in and grabbed the radar detector." Obviously, Churchwell did more than simply provide an opportunity for Irvan to steal the radar detectors: he was an active participant in the crimes.[2] The trial court thus properly refused to give a criminal facilitation instruction.

■ Churchwell next claims that the Commonwealth's reference to his "post-stop" silence during its closing argument deprived him of due process. The prosecutor made the following comments:

This fellow, through his counsel, wants you to believe that he was just sitting there idly by, not bothering anyone, while this little thief stole radar detectors right and left.

But he had an opportunity to profess his innocence. Do you remember when Officer Reed stopped him there at the intersection?

If this guy was truly innocent, why didn't he say to Officer Reed, 'Officer, you won't believe what this guy is doing! He's been all over the dam stealing radar detectors, and I don't want any part of it?'

That's not what he did, is it?

Are those the actions of an innocent man, to sit silently by while this officer pulls them over? I know if I were truly innocent and I thought I was about to be arrested, I would say, 'Look, Officer Reed, I didn't have anything to do with it. It was all this guy's idea. He did it all.'

But he sat there with this radar detector sitting on the dash. I say to you that he was equally as guilty as Irvan was.

In *Green v. Commonwealth*, Ky., 815 S.W.2d 398, (1991), the police arrested the defendant for trafficking in a controlled

---

**2.** Churchwell also argues that the trial court should have directed a verdict of acquittal since the evidence was insufficient to sustain the verdict against him. As we have noted, the evidence supports the conclusion that Churchwell actively participated in the theft. Under the standard set forth in *Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3, 4 (1983), it was not unreasonable for the jury to find Churchwell guilty.

substance when they discovered a pouch of cocaine on the ground several feet from him. During its summation, the Commonwealth said:

> Why else would you know that that was his pouch? Put yourself in the situation. The police officer finds a suspicious looking package behind you. What are you going to do? You're going to say it's not mine. He never said a word. He never denied that was his pouch.

*Id.* at 399.

The Supreme Court held that although the prosecutor's comment on Green's post-arrest silence was improper, it was harmless error. The Court based its decision on a police officer's eyewitness testimony that the pouch containing the drugs fell from Green's hands. Furthermore, Green made two post-*Miranda*[3] statements that suggested he was guilty. Considering this evidence, the Court held, there was "no substantial possibility that the result would have been any different." *Id.* Therefore, the Court concluded, the error was harmless beyond a reasonable doubt. *Id.*

This case is different. Based on the evidence, we believe that the jury may well have acquitted Churchwell absent the Commonwealth's prejudicial statements. The only compelling evidence of Churchwell's guilt was Irvan's testimony that he and Churchwell stole the radar detectors. Since Irvan turned state's evidence, and had often lied to the police, his credibility was highly questionable. Furthermore, the prosecutor's comments about Churchwell's "post-stop" silence came minutes after the defendant rested without putting on evidence, as was his constitutional right. Given these circumstances, we cannot say the error was harmless beyond a reasonable doubt.

■ Next, Churchwell says that the trial court erred in overruling his motion to suppress introduction of the radar detector in evidence since it was discovered as the

result of an illegal stop by the police. Specifically, he argues that there existed no "articulable suspicion of criminal activity" when Officer Reed stopped the vehicle. We need not address this argument because we have concluded that the stop was illegal for another reason: it was made outside the officer's jurisdiction.

KRS 148.056 provides, in pertinent part:

> (1) The commissioner of parks, in his discretion, may employ and commission park rangers as the commissioner deems necessary to secure the parks and property of the department of parks and to maintain law and order and such employes, when so commissioned, shall have all of the powers of peace officers *and shall have on all parks property and on public highways transversing such property in all parts of the state* the same powers with respect to criminal matters and enforcement of the laws relating thereto as sheriffs, constables and police officers in their respective jurisdictions.... (Emphasis supplied).

Here, Officer Reed stopped Churchwell approximately four miles outside the park. Officer Reed was not in hot pursuit of someone who had committed a crime within the park.[4] Instead, he observed the men cruising in the marina parking lot and decided to follow them because they looked suspicious. Once outside the park, the men turned south onto Highway 641. Reed then called in the car's license number to learn the identity of its owner. The dispatcher advised Reed that "he knew the [owner] and it may need to be checked out." Reed then stopped the vehicle at the intersection of Highway 641 and 1422. The stop occurred outside the park ranger's jurisdiction and was, therefore, improper.

The Commonwealth argues that KRS 148.056 should be liberally construed to allow a stop or search where the investigation originated on state park property. We decline to do so.

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** KRS 431.045 authorizes police officers in actual pursuit to "continue such pursuit across corporate or county lines for the purpose of making an arrest." Likewise, we believe a park ranger in hot pursuit may continue to pursue a subject outside the confines of a state park.

Since exigent circumstances did not exist, Officer Reed could have radioed other law enforcement officials to continue the investigation outside the park area. If he had a reasonable and articulable suspicion that the men were, or had been, engaged in criminal activity, Reed could have made a brief investigatory stop inside the park pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). There is no evidence that the men behaved more suspiciously once they exited the park.

■ Even if the stop was illegal, the Commonwealth argues, Irvan voluntarily gave the radar detector to Officer Reed, so it was not "fruit of the poisonous tree."

Evidence that is either the direct or indirect product of illegal police action must be suppressed as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441, 445 (1963). However, if the police obtain evidence from a source *independent of the illegality*, the evidence will be admitted. *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319, 321 (1920). In other words, when police obtain knowledge of facts through an independent source, the prosecution is not barred from attempting to prove such facts. *Id.*

Here, Officer Reed would not have contacted Irvan but for the illegal stop of his automobile earlier that night. There is no indication that Reed independently learned that Irvan or, for that matter, Churchwell was involved in the theft of the radar detector. It was the illegal stop that led Reed to Irvan's house and ultimately to Irvan's decision to voluntarily turn over the radar detector to the police. There was no independent source for the device's "seizure."

In addition, it has been held that a voluntary act of an accused is insufficient to cure an otherwise unlawful acquisition of evidence. See *Bynum v. United States*, 262 F.2d 465 (D.C.Cir.1958); *United States v. Watson*, 189 F.Supp. 776 (S.D.Cal.1960). We believe the same principle applies where another suspect involved in the illegal stop has voluntarily turned over evidence to the police as a direct result of the stop. Such an act does not "purge" the taint of an illegal stop.

Finally, Churchwell argues, and the Commonwealth agrees, that the final judgment incorrectly recites that he was convicted of two counts of Theft by Unlawful Taking. The trial court should correct the judgment according to RCr 10.10 to reflect that he was convicted of but one count.

The judgment is reversed and this case is remanded for proceedings consistent with this opinion.

All concur.