Joe **FERRANTELLO** et al., d/b/a Texas Poultry & Egg Company, Appellants,

v.

**PAYMASTER FEED MILLS**, Appellee.

No. 15664.

Court of Civil Appeals of Texas.

Dallas.

June 10, 1960.

Piranio & Fults, and Rae Ann Fichtner, Dallas, for appellants.

Bradbury, Tippen & Brown, Abilene, Carter, Gallagher, Jones & Magee, and Ben T. Warder, Jr., Dallas, for appellee.

DIXON, Chief Justice.

Appellee Paymaster Feed Mills, a Division of Anderson-Clayton & Company, Inc., filed suit against J. Rufus Bezner, and also against appellants Joe and Buster Ferrantello, wholesale poultry dealers, doing business as Texas Poultry & Egg Company.

In its original petition appellee sued Bezner on a number of notes for a total balance of $20,232 and for foreclosure of chattel mortgage liens on a number of groups or flocks of chickens. Appellee sued the Ferrantellos for $4,335.80 for damages resulting from the alleged conversion by the Ferrantellos of four flocks or groups of chickens, which appellee says were subject to recorded mortgages in favor of appellee at the time of the purchase of the fowls by appellants from Bezner.

The Ferrantellos filed their plea of privilege to be sued in Dallas County, Texas, their place of residence. The plea of privilege was sustained and the cause of action against them was transferred to Dallas County for trial.

The action against Bezner remained in Taylor County, Texas. After suit was filed certain payments were made and credited to his account. An agreed money judgment was entered against him for $7,010.03, plus $1,000 attorney's fees. The judgment against Bezner did not provide

for foreclosure of appellee's chattel mortgages.

In the Dallas County trial judgment was rendered against the Ferrantellos, following a jury verdict, for the sum of $3,835.80, plus interest. They have appealed.

Bezner was a poultry raiser. He raised both egg laying chickens and breeder hens. He had flocks of birds in a number of different places. For purpose of this appeal we need consider only the four flocks of chickens he owned in three different locations which flocks the parties have designated as the "Martin" flock, the "Barnhart" flock and the "Sears" flocks.

It is undisputed that the damages appellee recovered against appellants were for the alleged conversion by appellants of the poultry in the above named flocks on which appellee claims a mortgage; and that the judgment against Bezner was based on the promissory notes executed by Bezner for the purchase of feed and supplies in connection with the raising of the chickens.

### Opinion.

In their first point on appeal appellants assert that the trial court erred in overruling their plea in abatement and motion to dismiss, which plea and motion were grounded on the theory that by proceeding to judgment against Bezner on its claim against him, (on which claim partial payment had been made) appellee as a matter of law had made an election of remedies and was estopped from recovering judgment against appellants for alleged conversion of the mortgaged property.

■ We are unable to agree with appellants. Ordinarily a mortgagee may not have judgment for foreclosure of his mortgage and also a money judgment against a third party for conversion of the mortgaged property. 12 Tex.Jur.2d 75. But the circumstances which require such an election between the two remedies are not present in this case.

■ The judgment against Bezner was not a judgment of foreclosure. It was a simple money judgment for the balance due after allowing Bezner credits for payments made. True, appellee in its original petition plead for foreclosure; but the mere institution of a suit for foreclosure without prosecuting the suit to a judgment of foreclosure does not constitute an election of remedies under the circumstances here present. Texas Building & Mortgage Co. v. Rosenbaum, Tex.Civ.App., 159 S.W.2d 554, 558; Seamans Oil Co. v. Guy et al., 114 Tex. 42, 262 S.W. 473; Lewis et al. v. Powell, Tex.Civ.App., 205 S.W. 737. Appellants' first point is overruled.

Appellants' second point is that the court erred in refusing to submit to the jury a special issue inquiring whether the chickens sold to appellants were the same chickens listed in the mortgage signed by Bezner. It is also asserted by appellants that there was sufficient evidence to raise a fact question as to whether the chickens listed in the mortgages were adequately described so as to place appellants on notice of the lien against the poultry.

■ The mortgage on the "Barnhart" flock describes the mortgaged property as "6,000 Silver Broad Broiler Chicks" located on a 75 acre tract known as the Jack Barnhart farm in Cooke County, Texas about four miles south of Gainesville, Texas, said farm being the same land described in a deed recorded in Volume 296, page 101 of the Deed Records of Cooke County. The mortgage recites that it is the intention of the mortgagor to mortgage all the poultry now owned or hereafter acquired by him. The instrument was of record in Cooke County at the time of the purchase of the chickens by appellants.

The mortgages covering the two "Sears" flocks in Cooke County, Texas and the "Martin" flock in Parker County, Texas are described in similar detail, and were also of record at the time appellants bought the chickens.

With reference to the chickens sold to appellants, Bezner testified as follows:

"Q. Do you remember having sold some birds off the Martin place to Texas Poultry and Egg Company? A. I am sure—I guess that is where they went because actually I don't believe I hauled that load myself. I think, if I remember right, I think I was sick and the boys went down and hauled them, if I remember right. I don't think I was actually there. Seems to me like there was snow and ice on the ground. But I assume that is where they went. Actually I couldn't say I know they got there. But I believe I got the check for the chickens. I think I had the boy tell Joe to mail me the check later on. *So I am sure that is where they went to, because I got the money for them anyway."* (Emphasis ours.)

"Q. These three loads of chickens that you've identified here for which you were paid by checks numbered 20, 22 and 24—those being the exhibit numbers—those chickens for which you got those checks were mortgaged to Paymaster Feed Mills at the time you sold them to the Ferrantellos, weren't they? A. I imagine so—all the rest of them were.

"Q. Well, they were, weren't they?

"The Court: Answer out. A. Yes."

The mortgaged property was described with sufficient definiteness to fix a lien in favor of appellee. See 12 Tex.Jur.2d 34, § 24, and cases there cited; and 14 C.J.S. Chattel Mortgages § 64, p. 671. And having been recorded the mortgage was sufficient to constitute constructive notice to appellants of appellee's lien. 12 Tex.Jur.2d 50.

Bezner's testimony above quoted which was undisputed, definitely established that the mortgaged chickens involved in this controversy were the chickens purchased by appellants. The checks referred to by Bezner were in evidence. They were checks issued by appellants in payment of the chickens. There was no occasion to submit an issue to the jury as to whether the chickens sold to appellants were the mortgaged chickens. Appellants' second point on appeal is overruled.

In their third point appellants complain of the definition of the word "Waiver" as submitted by the court. Appellants say that the definition placed a greater burden of proof on them than is required by law; and that the definition requested by them was proper when applied to the evidence in the case.

The court submitted the following definition:

"You are instructed that by the term 'waiver' as used in this charge is meant the intentional relinquishment of a known right. It is a voluntary act and implies an election to dispense with something of value or to forego some advantage which might have been demanded and insisted upon."

Appellants objected to the submission of the above definition on the ground that it required the jury to find an intentional relinquishment of a known right, whereas the law requires only that there be such conduct as warrants an inference of the relinquishment of a right.

Appellants in connection with their objection requested the court to submit this definition: "A waiver in a case consists of such conduct as warrants an inference of the relinquishment of a right."

We see no merit in appellants' third point. Intention is a necessary element of waiver as distinguished from estoppel. And this is true whether the intention be established expressly or by inference. Goodwin v. Abilene State Bank, Tex.Civ.App., 20 S.W.2d 1090, 1092; Sovereign Camp Woodmen of the World v. Putnam, Tex.Civ.App., 206 S.W. 970, 972.

Furthermore, we think that appellants' requested definition is not correct. It fails to instruct the jury that the relinquishment must be *intentional,* and that the right relinquished must be a *known* right. Houston Fire & Casualty Ins. Co., v. Pritchard & Abbott et al., 155 Tex. 120, 283 S.W.2d 728 (Syl. 8) ; Kennedy et al. v. Bedner, 104 Tex. 149, 135 S.W. 524; Carolina Insurance Co. v. Christopher, 130 Tex. 245, 106 S.W.2d 138.

Appellants' third point is overruled.

The judgment of the trial court is affirmed.

CRAMER, J., not sitting.