Marie LANGLEY, Individually and as Representative of the Estate of John Langley and Mariah Langley, a Minor, Appellants,

v.

Floyd E. JERNIGAN, M.D., Appellee.

No. 10–00–373–CV.

Court of Appeals of Texas, Waco.

May 1, 2002.

Rehearing Overruled May 22, 2002.

H.K. Wasoff, Jr., Thomas B. Cowart, Windle Turley, P.C., Dallas, for appellant.

Keith C. Cameron, Naman, Howell, Smith & Lee, P.C., Austin, Nancy Morrison, Naman, Howell, Smith & Lee, P.C., Waco, Bob Burleson, Bowmer, Courtney, Burleson, Norman & Moore, Temple, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

When forty-six-year-old John Langley began to experience pain in his abdomen, he went to the emergency room at Providence Hospital in Waco, where he was later admitted. It was October 1996. He

was treated by several physicians, including Appellee Jernigan who was the attending physician, *i.e.,* he had the primary responsibility for Langley's treatment. Emergency surgery was performed, but within two days Langley died. He left a wife, Marie, and a young daughter, Mariah. In September 1998, Marie, individually and as representative of Langley's estate and of Mariah, sued Providence and six physicians, including Jernigan.

In 2000, Jernigan filed a motion to dismiss, asserting that the requirements of article 4590i, section 13.01 (pertaining to expert reports) of the Medical Liability and Insurance Improvement Act had not been complied with. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01 (Vernon Supp. 2002). In July 2000, the trial court granted the motion and ordered all claims between Appellants and Jernigan severed into a separate case. Marie, individually and as representative, appeals from that final judgment.

### Procedural Background

Section 13.01(d) requires a plaintiff in a medical malpractice case, within 180 days of filing the lawsuit, to furnish the defendant with an expert report and curriculum vitae. *Id.* An "expert report" is defined as "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* at 13.01(r)(6). A combination of reports can supply the necessary information to satisfy the definition. *Id.* at 13.01(i). In October 1998, a month after filing the lawsuit, Appellants furnished two expert reports to the defendants, including Jernigan, one from Dr. Spiro, and one written jointly by Dr. McKhann and Dr. Weihl.

Twenty months later, on June 23, 2000, Jernigan filed a "Motion to Dismiss with Prejudice and to Sever" under section 13.01(e). *Id.* The motion asserted that the expert report by McKhann and Weihl (1) did not mention Jernigan, (2) did not describe the applicable standard of care of a family practitioner such as Jernigan, (3) did not state that Jernigan violated any standard of care, and (4) did not identify a causal relationship between any conduct by Jernigan and Langley's death. The motion made the same complaints about the Spiro report as it did about the McKhann–Weihl report, with the exception that the Spiro report made one passing reference to Jernigan. Appellants filed a response asserting that (a) Jernigan should not have been allowed to wait almost two years before raising the issue, resulting in the expiration of the thirty-day extension provisions in section 13.01(f, g), or (b) they should be granted an extension of time in which to file a supplemental report, which was attached to the response. The trial court dismissed Appellants' claims, with prejudice. *Id.* § 13.01(e).

On appeal, Appellants assert four reasons why the cause should not have been dismissed:

1. Jernigan waived his complaint by waiting almost two years to make it, during which period he fully participated in discovery.
2. The reports do comply with section 13.01(r)(6).
3. If the reports do not comply with 13.01(r)(6), they reflected a good faith effort to do so. § 13.01(*l*).
4. The trial court should have granted the request for a thirty-day grace period so Appellants could file a supplemental report. § 13.01(g).

*Legal Principles*

█ The Supreme Court recently construed section 13.01 in *American Transitional Care v. Palacios*, 46 S.W.3d 873 (Tex.2001). Based on that case, we discern the following nine rules about expert reports:

1. A plaintiff has 180 days from filing suit to furnish the defendant with an expert report and a curriculum vitae for each expert on which the plaintiff relies, or, in the alternative, to nonsuit the cause. *Id.* at 877 (citing § 13.01(d)).

2. If a plaintiff does not file a report or vitae "within the time period allowed," the defendant may move to dismiss the cause, in which event the trial court "must sanction the plaintiff by dismissing the cause with prejudice, awarding costs and attorney's fees ...." *Id.* (citing § 13.01(e)).

3. If the plaintiff does timely file an expert report, but its contents are inadequate to comply with the requirements contained in subsection (r)(6), the defendant may move to dismiss the cause for inadequacy of the report, and if, after hearing, the trial court finds that the report "does not represent a good faith effort to comply with the definition of an expert report in Subsection (r)(6)" and the time for filing a report has passed, the trial court "must then dismiss with prejudice the claims against the defendant." *Id.* (citing § 13.01(e), (*l*)).

4. "Adequacy" is based on whether the report "represents a good-faith effort to comply with the statutory definition of an expert report" contained in section 13.01(r)(6). *Id.* at 878 (citing 13.01(*l*)). "[T]he only information relevant to the inquiry is within the four corners of the document." *Id.*

5. Section 13.01(r)(6) "requires" that the report provide "a fair summary of the expert's opinions about the applicable standard of care, the manner in which the care failed to meet that standard, and the causal relationship between that failure and the claimed injury." *Id.* at 878 (citing § 13.01(r)(6)). *Palacios* says the report also (1) "must inform the defendant of the specific conduct the plaintiff has called into question," and (2) "must provide a basis for the trial court to conclude that the claims have merit." *Id.* at 879.

6. A report is inadequate if (1) it "merely states the expert's conclusions about the standard of care, breach, and causation," or (2) it "omits any of the statutory requirements." *Id.*

7. The report "need not marshal all the plaintiff's proof." *Id.* at 878.

8. The information in the report need not meet the same requirements as evidence in a summary-judgment proceeding or at trial. *Id.* at 879.

9. A trial court's determination about the adequacy of a report is reviewed for abuse of discretion. *Id.* at 877.

*Waiver*

█ Appellants first argue "waiver,"[1] which is the intentional relinquishment of a

---

1. The complaint about Appellees' failure to timely object to the expert reports was preserved by its inclusion in Appellants' written response to Jernigan's motion to dismiss, and by Appellants' reference to the matter at the hearing on the motion. Tex.R.App. P. 33.1(a). Appellees do not complain about preservation of the complaint.

known right.[2] *Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex.1996); *United States Fidelity & Guar. Co. v. Bimco Iron & Metal Corp.*, 464 S.W.2d 353, 357 (Tex.1971); *Ford v. Culbertson*, 158 Tex. 124, 308 S.W.2d 855, 865 (1958); *Cal–Tex Lumber Co. v. Owens Handle Co.*, 989 S.W.2d 802, 812 (Tex.App.-Tyler 1999, no pet.). The right allegedly waived may be one conferred by law or contract. *Culbertson*, 308 S.W.2d at 865; *Zurich Gen. Accident & Liability Ins. Co. v. Fort Worth Laundry Co.*, 63 S.W.2d 236, 237 (Tex.Civ.App.-Fort Worth 1933, no writ). "Intention" to waive may be either expressly made or inferred from intentional conduct that is inconsistent with an intent to claim the right. *Tenneco*, 925 S.W.2d at 643; *Culbertson*, 308 S.W.2d at 865; *Estate of Blardone v. McConnico*, 604 S.W.2d 278, 283 (Tex.Civ.App.-Corpus Christi 1980, writ ref'd n.r.e.); *Cal–Tex*, 989 S.W.2d at 812; *Ferrantello v. Paymaster Feed Mills*, 336 S.W.2d 644, 647 (Tex.Civ. App.-Dallas 1960, writ ref'd n.r.e.). Almost every right may be waived. *Borgen v. State*, 672 S.W.2d 456, 460 (Tex.Crim. App.1984); *Hipp v. Donald*, 220 S.W.2d 268, 272 (Tex.Civ.App.-Fort Worth 1949, writ ref'd n.r.e.) ("Most procedural matters may be waived while strictly jurisdictional matters cannot.").

Jernigan responds that common law waiver does not apply here. He points out that the statute imposes no time limit in which the defendant must request that the court dismiss the lawsuit due to an inadequate expert report. We disagree. "Waiver" applies to rights conferred by statute. *Culbertson*, 308 S.W.2d at 865; *Zurich Gen.*, 63 S.W.2d at 237. The issue is not whether Jernigan *may* waive his right to move the court for a dismissal, but whether he *did* waive that right.

Jernigan did not expressly waive his right to complain about the expert reports. The trial court also impliedly found that he did not exhibit intentional conduct inconsistent with his right to seek a dismissal. *Tenneco*, 925 S.W.2d at 643; *Culbertson*, 308 S.W.2d at 865. We will review this implied finding for abuse of discretion. *Palacios*, 46 S.W.3d at 877.

Waiver by inference only applies to prevent fraud and inequitable consequences. *Cal–Tex*, 989 S.W.2d at 812; *McConnico*, 604 S.W.2d at 283. There must be "clear, unequivocal, and decisive acts" showing an intent to waive. *Shook v. Republic Nat. Bank of Dallas*, 627 S.W.2d 741, 749 (Tex.App.-Tyler 1981), rev'd on other grounds, 653 S.W.2d 278 (Tex.1983); *McConnico*, 604 S.W.2d at 283; *see Robinson v. Robinson*, 961 S.W.2d 292, 300 (Tex. App.-Houston [1st Dist.] 1997, no writ) (proponent must "produce conclusive evidence"). Also, for waiver by inference to apply, there must be conduct that misleads the opposite party to his prejudice to believe that a waiver was intended. *Texas Const. Associates v. Balli*, 558 S.W.2d 513, 521 (Tex.Civ.App.-Corpus Christi 1977, no writ); *Cox v. Bancoklahoma Agri–Service Corp.*, 641 S.W.2d 400, 404 (Tex.App.-Amarillo 1982, no writ).

The lawsuit was filed on September 15, 1998, and the two expert reports, written ten months before the lawsuit was filed, were served and filed in October. Appellants point to the following as "clear, unequivocal, and decisive acts" by Jernigan showing an intent to waive. *Shook*, 627 S.W.2d at 749; *McConnico*, 604 S.W.2d at 283.

- In his original answer, he propounded interrogatories and requests for production on the plaintiffs.

---

2. In the usual circumstance, "waiver" is an affirmative defense. *Cal–Tex Lumber Co. v. Owens Handle Co.*, 989 S.W.2d 802, 812 (Tex. App.-Tyler 1999, no pet.); TEX.R. CIV. P. 94.

He answered interrogatories propounded on him by the plaintiffs three months after the lawsuit was filed, and filed two Rule 11 agreements concerning the time-frame for serving his answers.

He gave his deposition on April 23, 1999, 221 days after the lawsuit was filed.

His attorney participated in the depositions of co-defendant John Edward Jones on November 10, 1999, co-defendant William Turney on May 24, 2000, and Allen Patterson and Keith Hopkins on July 11, 2000.

During the above time periods, other parties were actively engaged in discovery of various kinds, and they filed several motions for summary judgment and to dismiss.

In his Original Answer filed October 6, 1998, he pled: "By way of affirmative defense, Defendant pleads the defense of failure to follow the statutory steps to perfect a claim." In his First Amended Original Answer, filed May 5, 2000, he deleted this defense, as well as over a dozen affirmative and other defenses, and added the defense of "charitable immunity."

He filed a motion for summary judgment on May 5, 2000, the same day he filed his First Amended Original Answer. Its sole ground was "charitable immunity." He supplemented the motion on July 13, 2000, with deposition testimony.

Co-defendants filed motions to dismiss based on inadequate expert reports: (a) Dr. Hoffman, filed November 12, 1999; (b) Dr. Turney, filed March 31, 2000; (c) Dr. Carpenter, filed May 12, 2000. (Appellants non-suited Dr. Hoffman and Dr. Turney.)

On June 23, 2000, three days after the cause against co-defendant Dr. Carpenter was dismissed by the trial court, with prejudice, based on inadequate expert reports, Jernigan filed his own motion to dismiss based on the inadequacy of the expert reports.

On July 27, Appellants filed a third expert report and curriculum vitae from Dr. Charles McKhann, and the report contained specific allegations about Jernigan's negligence. On July 28, they filed a response to Jernigan's motion to dismiss. The motion was granted on July 28 after a hearing on that date.

Appellants also rely on *Martinez v. Lakshmikanth,* 1 S.W.3d 144 (Tex.App.-Corpus Christi 1999, pet. denied). Plaintiffs did not file an expert report, and 223 days after filing the lawsuit, they non-suited the cause. *Id.* at 145–46. Then they refiled the lawsuit. In the second suit, the defendants claimed that plaintiffs had 180 days from the filing of the first lawsuit to either file the expert report or non-suit; because they did neither in the 180 days, the only proper disposition of the case was a dismissal with prejudice. *Id.* at 146. The court held that section 13.01(e) places the burden on the defendant to file a motion for dismissal if the plaintiff has not filed the expert report within the 180 days. *Id.* at 147–48. "This Court will not reward defendants who 'sit on their hands' for forty-three days and allow the plaintiffs to non-suit their cause of action and refile. ... [T]hey have waived their right to the remedy provided in section 13.01(e)." *Id.* at 149.

 While not squarely on point, the broader meaning of *Martinez* is clear. A defendant must timely object to an inadequate expert report. In the present case, (a) failure to do so for 646 days after the lawsuit was filed, (b) considerable involvement in discovery, (c) the May filing of a motion for summary judgment based on

"charitable immunity," and (d) the deletion in an amended answer of language in the original answer which specifically referred to statutory prerequisites not being met is conduct inconsistent with an intent to complain about the reports. This conduct also misled Appellants, which worked an inequity on them. The trial court abused its discretion in refusing to find a waiver, and we sustain the issue.

### Other Issues

Having sustained the "waiver" issue, based on which we will reverse the order of dismissal, we do not address Appellants' other issues.

### Conclusion

By waiting an extended period of time before complaining about Appellants' expert reports, engaging in discovery, seeking a summary judgment on other grounds, and amending his answer to delete the reference to statutory prerequisites not being met, Jernigan impliedly waived his right to complain about the adequacy of the expert reports. We reverse the order of dismissal and remand the cause for further proceedings.

Justice GRAY, dissenting.

GRAY, Justice, dissenting.

This is not a complicated case. Langley has framed the central issue as follows: "Is there no limit on the time in which a defendant may seek to have a plaintiff's medical malpractice suit dismissed on the basis of an allegedly inadequate article 4590i, section 13.01 expert report?" While this may be a nice abstract question, the answer to this question may not result in relief for Langley. The more limited question, the one actually pertinent to these facts, is: Did the trial court err in dismissing Langley's case because the required expert affidavit was not timely filed,

but the motion to dismiss was not filed until more than 20 months later?

Our sister court in El Paso had no problem with this question. It took Chief Justice Barajas only one paragraph to state the issue and dispose of it as follows:

In Issue No. Two, Appellants argue that dismissal was improper because Appellees waited too long to seek dismissal based on the shortcomings of the report. Without citing any case or statutory authority, Appellants argue that "Appellees should be precluded from prevailing when Appellees waited for more than one (1) year to object to and complain of the expert report, and then try to avail themselves of a dismissal based on the 180-day deadline with no remedy in equity or at law to Appellants." Because Section 13.01 makes no mention of a time limitation for challenging the sufficiency of an expert report, we overrule Appellants' Issue No. Two.

*Gonzalez v. El Paso Hosp. Dist.,* 68 S.W.3d 712, 717 (Tex.App.-El Paso 2001, no pet.); *see also Chisholm v. Maron,* 63 S.W.3d 903 (Tex.App.-Amarillo 2001, no pet.); *Marquez v. Providence Memorial Hosp.,* 57 S.W.3d 585, 594 (Tex.App.-El Paso 2001, no pet.). We should dispatch this case with equal ease and the same result as *Gonzalez.*

### NO DUE COURSE OF PLEADING OR PROCEEDING

The legislature did not include a due course of pleading, proceeding, or other procedural requirement for the defendant to follow in order to be entitled to dismissal under the Medical Liability and Insurance Improvement Act. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01 (Vernon Supp. 2002). The rules of civil procedure do not require it. TEX.R. CIV. P. 84. We should not impose one by judicial fiat.

When due course of pleading or proceeding is important to the purpose of a rule or statute, it is fairly simple to achieve and a relatively common provision included in rules and statutes. *Cf* Tex.R. Civ. P. 86 (Venue) and Tex.R. Civ. P. 120a (Special Appearance) with Tex. Fam.Code 155.204 (Venue) and Tex. Bus. Comm.Code 17.505(c) (time for filing plea in abatement in DTPA actions). But there is simply nothing in the statute to indicate the purpose of the provision regarding dismissal for the failure to timely file the affidavit: (1) requires the motion be filed or considered in any particular order, or (2) would be inconsistent with raising the issue at a date later than the earliest possible date that it could be filed. When the purpose of legislation has included a requirement to assert a right within a particular time frame or have it decided in a particular order of proceeding, the legislature has shown that it is capable of drafting the statute to accomplish that objective. *See id.*

## THE WAIVER ARGUMENT

The majority recognizes Jernigan did not expressly waive his right to file a motion to dismiss under the statute. But they have determined the trial court abused its discretion by refusing to hold Jernigan had impliedly waived his right to move for dismissal on the ground the required expert report had not been timely filed. I disagree.

There is no need for me to go into all the details of every reason that I disagree with the analysis and conclusion as stated in the majority opinion. I will limit my comments to just the major issues. Generally, it should be sufficient to say that nothing identified as evidence of an implied waiver by Jernigan, is actually inconsistent with Jernigan's right to file a motion to dismiss a medical malpractice case because the required expert report was

not filed. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01 (Vernon Supp.2002); *Gonzalez v. El Paso Hosp. Dist.*, 68 S.W.3d 712, 717–18 (Tex.App.-El Paso 2001, no pet.).

## Where are the Limits to Waiver?

The waiver argument used by the majority could be applied to any claim or defense. But new claims and defenses can be raised without leave of court until seven days prior to trial and on leave of court can be added within seven days of trial, during trial, and even after a jury verdict. *See* Tex.R. Civ. P. 63. Additionally, Texas practice has always allowed the filing and consideration of summary judgment motions until the time of trial so long as the required time periods specifically set out in the rules can be complied with. There is no fundamental distinction between holding that a defendant has failed to timely move for dismissal under this statute than holding a litigant waived the right to bring a motion for summary judgment because they did not seek summary judgment as soon as practicable and continued to engage in discovery. This has never been the law in the State of Texas for summary judgments. It is not the law under this statute; until now.

### *Martinez*—Strict Application of Statute

Langley and the majority rely heavily on *Martinez* to support their waiver argument. *Martinez v. Lakshmikanth*, 1 S.W.3d 144 (Tex.App.-Corpus Christi 1999, pet. denied). In *Martinez*, the plaintiff failed to file the affidavit required by the statute within 180 days after the case was filed. The plaintiff dismissed the case 43 days after the 180 day period had expired. The doctor had not moved to dismiss the case before the plaintiff voluntarily dismissed it. The plaintiff then filed a *second* suit which the trial court dismissed because the plaintiff had failed to timely file the expert affidavit in the *first* suit. In the appeal of the *second* suit, the court

held that the statute did not prohibit the plaintiff from filing a new suit, which had the effect of giving the plaintiff another 180 days in which to file the required expert report. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(e) (Vernon Supp.2002). The court stated:

> Considering the "plain and common meaning" of the words used in the statute, we find the legislature intended to provide plaintiffs with a 180–day window in which to file their expert report or non-suit their claim. TEX.REV.CIV. STAT. ANN. art. 4590i, § 13.01(d) (Vernon Pamp. 1999). Thereafter, the statute expressly states "the court *shall, on the motion of the affected physician* or health care provider, enter an order awarding as sanctions against the claimant ... *the dismissal of the action of the claimant against that defendant with prejudice to the claim's refiling*." TEX. REV.CIV. STAT. ANN. art. 4590i, § 13.01(e) (Vernon Pamp. 1999) (emphasis added). This language places the burden on the defendant doctors to move the trial court to dismiss the claim against them. Upon such motion, the trial court has no discretion but to dismiss the cause of action with prejudice. The Act specifically requires that some affirmative action be taken by the defendant before the court dismisses the cause of action. Failure to make the appropriate motion in a timely manner, effectively waives the defendant's right to this remedy.

*Martinez v. Lakshmikanth,* 1 S.W.3d 144, 148 (Tex.App.-Corpus Christi 1999, pet. denied) (emphasis as in the quoted text).

This holding is nothing more than applying the express wording of the statute by recognizing during the period of time after the expiration of the 180 days, but before the defendant takes some affirmative act, the statute does not prohibit the plaintiff from dismissing the case and filing a new proceeding. During the same time period, until the plaintiff actually non-suits the defendant, under the express provisions of the statute the defendant may move to dismiss the case with prejudice on the ground the required expert affidavit was not timely filed. But if the defendant files the motion to dismiss before the plaintiff non-suits the defendant, the defendant is entitled to a ruling on the motion to dismiss. *Id.;* TEX.R. CIV. P. 162 ("A dismissal under this rule shall have no effect on any motion for sanctions, ... pending at the time of dismissal....."). The court recognized this could cause a race-to-the-courthouse on the 181st day after suit was filed. *Martinez,* 1 S.W.3d at 148.

*Martinez* does not stand for implied waiver theory as used by the majority in this case. It is quite the contrary. It stands for the proposition that the statute must be applied as written. There is nothing in the statute which prevented the plaintiff from non-suiting a defendant before that defendant sought the benefits of the statute's dismissal-with-prejudice provision, and then filing a new case to obtain the benefit of another 180 days in which to file an expert report. There is also nothing in the statute that sets a timetable in which the defendant must file the motion to dismiss.

In this case, Langley could have non-suited Jernigan any time between the filing of suit and the filing of Jernigan's motion to dismiss, and then by filing a new suit against Jernigan, obtained the benefit of another 180 day time period in which to file an expert report. She did not. Likewise, Langley could have dismissed her suit against Jernigan after the trial court determined the affidavits were defective as applied to two other similarly situated defendants. She did not. The affidavits had been challenged as inadequate by another defendant for well over six months before

Jernigan filed the motion to dismiss, but Langley chose to stand on the adequacy of the affidavits.

## CONCLUSION

The trial court was entitled to review all the facts and circumstances and, having decided that the required affidavit was not timely filed, determine that the sanction of dismissal was appropriate. This is not an abuse of discretion. I question if the majority has applied the proper standard of review or simply substituted their judgment for what should be left to the discretion of the trial court. In the final analysis I cannot agree that the trial court abused its discretion by determining imposition of the sanction was appropriate. Accordingly, I respectfully dissent.