Rebecca Jane NICHOLS and Christopher Alan Nichols, individually and as representatives of Christian Alan Nichols, deceased, Appellants,

v.

NACOGDOCHES HOSPITAL DISTRICT, d/b/a Nacogdoches Memorial Hospital, Appellee.

No. 12–02–00118–CV.

Court of Appeals of Texas, Tyler.

Dec. 11, 2002.

Clayton E. Dark Jr., for appellant.

William D. Guidry, Nacogdoches, for appellee.

Panel consisted of GOHMERT, JR., C.J., WORTHEN, J., and GRIFFITH, J.

LOUIS B. GOHMERT, Jr., Chief Justice.

Appellants Rebecca Jane Nichols and Christopher Alan Nichols ("the Nicholses") appeal the trial court's dismissal of their claims against Appellee Nacogdoches Hospital District. The Nicholses raise two issues on appeal. We affirm.

### BACKGROUND

On April 4, 1999, Rebecca Jane Nichols ("Rebecca") went to the emergency room at Nacogdoches Memorial Hospital ("Hospital") with vaginal bleeding and complaints of abdominal pain and back pain. At the time Rebecca went to the emergency room, Rebecca was pregnant. L. Lewis ("Lewis"), a nurse at the Hospital, applied an external fetal heart monitor ("monitor") on Rebecca to determine whether she was having contractions. Lewis then contacted Rebecca's obstetrician, Dr. Craig Jessie, at 1:50 a.m. Rebecca continued to complain that pain was "coming and going;" however, no contractions were seen on the monitor because, as the Nicholses allege, the monitor was improperly applied.

Dr. Jessie arrived at the Hospital at 6:00 a.m. and reapplied the monitor. After Dr. Jessie reapplied the monitor, it signaled that Rebecca was having contractions. Dr. Jessie began treating Rebecca for her pre-term labor and transferred her to Schumpert Health Systems in Shreveport, where she delivered Christian Alan Nichols ("Christian"). The child died on April 5, 1999, allegedly because of extreme prematurity.

On October 11, 2000, Rebecca and her husband, Christopher Alan Nichols, individually and as representatives of Chris-tian, sued the Hospital under the Texas Tort Claims Act for the wrongful death of Christian. The Nicholses alleged that the Hospital was liable for Christian's death because Lewis, an employee of the Hospital, negligently and improperly applied the monitor. The Nicholses maintain that if Lewis had properly applied the monitor and recognized that Rebecca was going into pre-term labor, Rebecca could have received immediate treatment and there would have been no delay in treatment. The delayed treatment of Rebecca after the monitor was properly applied, the Nicholses argue, was ineffective because she was too far into labor when Dr. Jessie realized Rebecca was having contractions.

In support of their allegations and in order to comply with the requirements of the Medical Liability and Insurance Improvement Act[1] ("the Act"), the Nicholses filed an expert report prepared by Dr. Kaywin Carter. On June 20, 2001, the Hospital filed a motion to dismiss pursuant to section 13.01($l$) of the Act,[2] complaining that Dr. Carter's report did not comply with the Act's "expert report" requirements. Specifically, the Hospital argued that the report was deficient because it did not state the standard of care the Hospital was required to meet, the manner in which the care rendered by the employees of the Hospital failed to meet that standard, and the causal relationship between any such failure to meet that standard and the injury, harm and damages claimed by the Nicholses.

On April 11, 2002, the trial court entered an order granting the Hospital's motion to dismiss and dismissing the Nicholses' claims with prejudice. The Nicholses now

---

1. TEX.REV CIV. STAT. ANN. art. 4590i (Vernon Supp.2002).

2. Section 13.01($l$) instructs a court to grant a motion challenging the adequacy of an expert report only if it appears to the court, after a hearing, that the report does not represent a good faith effort to comply with the statutory definition of an expert report. *Id.* § 13.01($l$).

appeal, raising two issues: (1) whether the trial court abused its discretion in granting the Hospital's motion to dismiss based on the inadequacy of Dr. Carter's expert report, and (2) whether the Hospital waived its right to complain about the adequacy of Dr. Carter's report by delaying the filing of its motion to dismiss.

### ADEQUACY OF THE EXPERT REPORT

In their first issue, the Nicholses contend that the trial court abused its discretion in granting the Hospital's motion to dismiss because Dr. Carter's expert report complied with the statutory requirements.

### Requirements for Expert Reports

 In medical malpractice cases, plaintiffs are required, within 180 days of filing suit, either to provide each defendant physician and health-care provider with an expert report and the expert's curriculum vitae, or to nonsuit the claims. Tex.Rev. Civ. Stat. Ann. art. 4590i, § 13.01(d) (Vernon Supp.2002). An "expert report" is defined as a written report that (1) provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, (2) the manner in which the care rendered by the physician or health care provider failed to meet the standards, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. Id. § 13.01(r)(6). If a plaintiff fails within the time allowed to provide the expert reports and curriculum vitae, or to nonsuit the case, the trial court must sanction the plaintiff by dismissing the case with prejudice, awarding costs and attorney's fees to the defendant, and ordering the forfeiture of any applicable cost bond necessary to pay that award. Id. § 13.01(e). If a plaintiff timely provides a defendant with a document that he or she believes is an appropriate expert report, the defendant can move to challenge the adequacy of the expert report and argue that the report does not represent a good faith effort to comply with the statutory requirements for an expert report. A trial court must grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent a good faith effort to comply with the statutory definition of an expert report. Id. § 13.01(l). To constitute a good-faith effort, the report must inform the defendant of the specific conduct the plaintiff has called into question and provide a basis for the trial court to determine that the claims have merit. American Transitional Care v. Palacios, 46 S.W.3d 873, 879 (Tex.2001). A report that only states the expert's conclusions about the standard of care, breach, and causation does not fulfill these two purposes. Id. Nor can a report meet these purposes and thus constitute a good faith effort if it omits any of the statutory requirements. Id. The court should look no further than the report in conducting a good faith inquiry. Id. at 878. If a trial court determines that an expert report does not meet these statutory requirements and the plaintiff's time for filing a report has passed, the court must dismiss with prejudice the claims against the defendant who challenged the report. Id. § 13.01(e).

### Standard of Review

A trial court's determination about the adequacy of an expert report under the Act is reviewed under an abuse-of-discretion standard. Id. at 877. Under this standard, we defer to the trial court's factual determinations, but review questions of law de novo. Knie v. Piskun, 23 S.W.3d 455, 461 (Tex.App.-Amarillo 2000, pet. denied). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–

42 (Tex.1985). When reviewing matters committed to the trial court's discretion, a court of appeals may not substitute its own judgment for the trial court's judgment. *Flores v. Fourth Court of Appeals,* 777 S.W.2d 38, 41 (Tex.1989).

### Report of Dr. Kaywin Carter

In order to comply with the Act's requirements, the Nicholses submitted the report of Dr. Kaywin Carter, a board certified obstetrician/gynecologist. Before he prepared his report, Dr. Carter reviewed medical records compiled by Dr. Jessie, the Hospital and Schumpert Health Systems. The pertinent portion of Dr. Carter's report states the following:

> Rebecca Nichols was a 16 year old primiparous obstetrical patient of Dr. Craig Jesse [sic]. She had an uneventful prenatal course until April 4,1999, when she presented to Nacogdoches Memorial Hospital at approximately 25 weeks gestation complaining of "cramping" and "sharp" abdominal pain, a bloody vaginal discharge, and a "gush" of watery fluid one hour before. The fetal monitor was applied at 1:10 a.m. According to the patient, the belts for the external heart monitor and tocodynomanometer were placed on her rib cage and chest. Although the patient continued to complain of pain that was "coming and going," no contractions were seen on the monitor because of the improper application. Dr. Jesse [sic] evaluated her four hours later and applied the monitor properly. Contractions were easily documented on the monitor strip. The improper application is documented by the fetal monitor strips themselves. Dr. Jesse [sic] subsequently treated the preterm labor appropriately. The patient was transferred to Schumpert Health System in Shreveport, Louisiana. She delivered via classical Cesarean section a one pound, 10 ounce male which

subsequently expired secondary to extreme prematurity.

In Dr. Carter's opinion, the improper application of the fetal monitor was a significant negative deviation in the standard of care, and "[t]his inaccuracy caused an undue delay in the diagnosis and treatment of preterm labor, resulting in the preterm birth and demise of this infant."

■■■ The Hospital argues that Dr. Carter's report does not state (1) any standards of care, (2) how those standards were breached, or (3) how a breach of those standards caused Christian's death. The standard of care for a hospital or other medical provider is what an ordinarily prudent hospital or other medical provider would do under the same or similar circumstances. *Palacios,* 46 S.W.3d at 880 (*citing Birchfield v. Texarkana Mem'l Hosp.,* 747 S.W.2d 361, 366 (Tex.1987)). Identifying the standard of care is critical: Whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently. *Id.* Dr. Carter's report does not delineate any standard of care that Lewis, the Hospital's employee, should have followed when she applied the monitor in order to make the monitor function properly. In their brief, the Nicholses agree with this conclusion but argue that one can infer from Dr. Carter's statement that the monitor was "improperly applied" that the accurate standard of care is to "properly apply the fetal monitor." However, Dr. Carter's opinion that the monitor was "improperly applied" is a conclusion without any specific information to show what the Hospital should have done differently. We cannot draw inferences or indications from a doctor's opinion because a conclusory report does not meet the Act's requirements. *See Bowie Memorial Hosp. v. Wright,* 79 S.W.3d 48, 53 (Tex.2002). Both

the trial court's and, therefore, this court's inquiry is limited to the "four corners of the report." *See Palacios,* 46 S.W.3d at 878; and *Forrest v. Danielson,* 77 S.W.3d 842, 847 (Tex.App.-Tyler 2002, no pet.). Because Dr. Carter's report fails to state any standards of care that the Hospital should have adhered to when applying the monitor to Rebecca, it cannot be considered a good-faith effort to comply with the statutory requirements for expert reports. *See Palacios,* 46 S.W.3d at 879. Therefore, we do not need to address whether the report met the other two requirements for adequate expert reports. The Nicholses' first issue is overruled.

### WAIVER OF THE HOSPITAL'S RIGHT TO CHALLENGE THE REPORT

In their second issue, the Nicholses argue that the Hospital waived its right to challenge the adequacy of the report because the Hospital filed its motion challenging Dr. Carter's report 252 days after the lawsuit was filed. The Nicholses base their argument on the recent case of *Langley v. Jernigan,* 76 S.W.3d 752, 757–58 (Tex.App.-Waco 2002, pet. filed), where the Waco Court of Appeals held that equity demanded that the defendant, who filed a motion to dismiss based on the inadequacy of the plaintiff's expert report, impliedly waived his right to complain about the adequacy of the report. The court held that the defendant waived his right to challenge the report because that defendant delayed filing the motion to dismiss until 646 days after the lawsuit was filed and after discovery had been substantially completed.

■ In order to preserve this complaint for our review, the Nicholses must have presented their waiver argument to the trial court by a timely filed motion, objection or request and must have obtained a ruling on their objections to the Hospital's right to challenge Dr. Carter's report. *See* TEX.R.APP. P. 33.1; *see also Wal–Mart Stores, Inc. v. McKenzie,* 997 S.W.2d 278, 280 (Tex.1999). The Nicholses failed to raise their waiver issue in the trial court; therefore, they have waived the issue on appeal.

■ Even if the Nicholses had not waived this issue, their argument would still fail. In the case at hand, the Hospital filed its motion to dismiss on June 20, 2001, 252 days after the Nicholses filed their lawsuit. The trial court did not rule on the motion until 295 days after the Hospital filed its motion to dismiss. The *Langley* court based its ruling on principles of equity, and stated that in order to find that a waiver has occurred, "there must be conduct that misleads the opposite party to his prejudice to believe that a waiver was intended." *Id.* at 756. In *Langley,* the discovery process was nearly complete, depositions of the parties had been taken, and motions for summary judgment had been filed. The court held that the defendant's conduct in the litigation prior to filing the motion to dismiss misled the plaintiff into believing that the report would go unchallenged because that conduct was inconsistent with an intent to complain about the timely-filed, yet allegedly inadequate expert report. *Id.* at 758. The record in the instant case is devoid of any evidence, either prior to the filing of the motion or prior to the trial court's ruling, demonstrating that the Hospital conducted itself in a manner that would lead the Nicholses to believe, to their prejudice, that a waiver of its right to challenge the expert report had occurred. The Nicholses second issue is overruled.

The judgment of the trial court is *affirmed.*