**COMMONWEALTH of Kentucky,**
**Appellant**

v.

**Floyd Grover JOHNSON, Appellee.**

**No. 2012–SC–000402–DG.**

Supreme Court of Kentucky.

Feb. 20, 2014.

---

Jack Conway, Attorney General of Kentucky, James Coleman Shackelford, Assistant Attorney General of Kentucky, Counsel for Appellant.

Emily Holt Rhorer, Assistant Public Advocate, Department of Public Advocacy, Counsel for Appellee.

Ian G. Sonego, Commonwealth's Attorneys Association, Robert Douglas Neace, County Attorneys Association, Vickie Lynn Wise, Justice and Public Safety Cabinet, Kentucky Office of Drug Control Policy, Morgain Mary Sprague, Kentucky State Police, Christopher T. Cohron, Kentucky Narcotic Officers Association, Catherine S. Wright, Operation UNITE, Denise Garrison McElvein, Office of the Attorney General of Missouri, Counsel for Amicus Curiae.

Opinion of the Court by Justice
CUNNINGHAM.

In 2009, Appellee, Floyd Grover Johnson, was the target of a drug investigation conducted in Powell County by investigators from the Office of the Attorney General ("OAG") and Operation UNITE. Operation UNITE is a task force receiving federal funds which works closely with state and local law enforcement personnel in investigating drug related crimes. In the present case, the OAG and Operation UNITE investigators used a confidential informant to conduct controlled drug buys. The Commonwealth's Attorney presented testimony from an OAG investigator to a Powell County grand jury detailing Johnson's involvement in the drug buys, as well as the video recordings documenting the transactions. No local law enforcement officer or entity participated in this specific investigation prior to initiating the grand jury proceedings.

On September 29, 2009, two indictments were returned by a Powell County grand jury charging Johnson with a total of three counts of first-degree trafficking in a controlled substance (morphine and oxycodone), second offense; and one count of delivery of drug paraphernalia. Johnson moved the trial court to suppress the evidence presented against him in both cases and to dismiss the indictments. He ar-gued that neither the OAG officers nor the Operation UNITE detectives had jurisdiction to conduct the investigation. Johnson specifically asserted that the OAG was not invited to participate in the investigation pursuant to KRS 15.200 and, thus, was without jurisdiction to conduct the investigation. Upon request by the Commonwealth's Attorney, an attorney from the Attorney General's Office of Special Prosecutions made an entry of appearance for the sole purpose of responding to Johnson's motions.

The trial court denied Johnson's motion to dismiss the indictments and concluded that the language of KRS 218A.240(1) provided the OAG with clear authority to make arrests regarding controlled substances. Accordingly, the court held that Johnson's indictments were valid. Johnson then conditionally pled guilty in both cases and was sentenced to a total of ten years imprisonment.

A unanimous Court of Appeals panel reversed the trial court's ruling. In so holding, the court reasoned that KRS 218A.240(1) did not vest the OAG with statewide investigatory jurisdiction, that KRS 15.200 was controlling, and that the directives of KRS 15.200 were not satisfied in the present case. This Court granted discretionary review. After reviewing the record and the law, we reverse the decision of the Court of Appeals.

### Statutory Interpretation

█ The Commonwealth primarily argues that the Court of Appeals erroneously interpreted KRS 218A.240(1), together with KRS 15.020 and 15.200, as limiting the OAG's jurisdiction to investigate drug crimes throughout the Commonwealth. Statutory construction is a matter of law which requires de novo review by this Court. *Hearn v. Commonwealth,* 80 S.W.3d 432, 434 (Ky.2002) (citing *Bob*

*Hook Chevrolet Isuzu, Inc. v. Commonwealth of Kentucky, Transportation Cabinet,* 983 S.W.2d 488 (Ky.1998)).

### KRS 218A.240(1)

Our analysis begins with KRS 218A.240(1), which states in pertinent part as follows:

All police officers and deputy sheriffs directly employed full-time by state, county, city, urban-county, or consolidated local governments, the Department of Kentucky State Police, the Cabinet for Health and Family Services, their officers and agents, and of all city, county, and Commonwealth's attorneys, *and the Attorney General, within their respective jurisdictions, shall enforce all provisions of this chapter* and cooperate with all agencies charged with the enforcement of the laws of the United States, of this state, and of all other states relating to controlled substances.

(Emphasis added).

The Court of Appeals interpreted this statute as merely encouraging cooperation between various law enforcement agencies and held that the term "jurisdictions" was ambiguous. Thus, whether the OAG had jurisdiction to investigate the drug crimes at issue in the present case was determined to be unclear. The court then turned to KRS 15.020 and 15.200 in search of clarity, concluding that the only manner in which the OAG may become involved in a drug-crime investigation is to be invited into the local jurisdiction by certain state and local officials listed in KRS 15.200. In this case, it is undisputed that none of the officials listed in KRS 15.200 requested the assistance of the OAG at any time.

Accordingly, we read the Court of Appeals opinion to hold that, if the extremely narrow condition precedent contained in KRS 15.200 is not fulfilled, the OAG may not investigate crimes anywhere in the Commonwealth. Under this reasoning, independent OAG investigations, as well as those in conjunction with other law enforcement entities, would be equally prohibited unless the mandates of KRS 15.200 were properly invoked. We strongly disagree.

In construing statutes, we must give effect to the intent of the General Assembly. *Maynes v. Commonwealth* 361 S.W.3d 922, 924 (Ky.2012). "We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration." *Id.* (citing *Osborne v. Commonwealth,* 185 S.W.3d 645 (Ky.2006)).

"[W]ithin their respective jurisdictions" is a limiting phrase intended to contain enforcement of the provisions of KRS Chapter 218A. The substance and extent of this limitation is revealed by the term at the heart of the phrase "jurisdictions." Our reading here reveals that this term refers to the geographical jurisdiction of the local officers and entities enumerated in the antecedent phrases. The Attorney General, the Department of Kentucky State Police, and the Cabinet for Health and Family Services are the only statewide organizations listed, with the Attorney General being the only statewide constitutional officer named. *See* Ky. Const. §§ 91 and 93. All other officers and entities enumerated in KRS 218A.240(1) clearly operate at the county level.

Further, if the General Assembly intended for the term "jurisdictions" to mean something other than geographical jurisdiction, it would not have used the term in its plural form preceded by the term "within." It makes no sense to read this plural term in its immediate context as referencing the subject matter jurisdiction

of the various entities listed or the OAG's prosecutorial jurisdiction. Thus, as a matter of syntax and common sense, we hold that the General Assembly intended for the jurisdiction of the OAG referenced in KRS 218A.240(1) to include the territorial boundaries of the Commonwealth of Kentucky.

■ When clarifying a statute, we may also consider the character and nature of the statute and the purpose to be accomplished, especially "where the statute is but a broad delegation of power and prescribes only in general terms a rule of action for officers charged with its execution." *Folks v. Barren County*, 313 Ky. 515, 232 S.W.2d 1010, 1013 (1950). Legislative intent not clearly revealed may be presumed to contemplate the reasonable and probable. *George v. Scent*, 346 S.W.2d 784, 790 (Ky.1961); *see also* KRS 446.080(1) ("All statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature...").

It is abundantly clear that KRS Chapter 218A is a comprehensive effort on behalf of the General Assembly to quell the drug epidemic plaguing our Commonwealth. Therefore, the most reasonable and probable objective of the General Assembly in drafting KRS 218A.240(1) was to combat a statewide epidemic on a statewide basis, using resources provided by certain statewide officers and entities. This reinforces our conclusion that the jurisdiction of the OAG referenced in KRS 218A.240(1) refers to the territorial boundaries of the Commonwealth of Kentucky.

However, even though we find the alternative interpretation proffered by Johnson and adopted by the Court of Appeals to be misguided, it deserves our earnest consideration. We recognize that conflicting interpretations by lower courts may, at the very least, present a reasonable case for statutory ambiguity. *See MPM Fin. Group, Inc. v. Morton*, 289 S.W.3d 193, 198 (Ky.2009) ("When the undefined words or terms in a statute give rise to two mutually exclusive, yet reasonable constructions, the statute is ambiguous."). The following statutory provisions discuss the various duties and charges of the OAG and provide further clarification.

### KRS 15.020 and 15.200

There is a distinction between the OAG's prosecutorial and investigative authority. The former is well-established. See KRS 15.020 and 15.200; *Hancock v. Schroering*, 481 S.W.2d 57 (Ky.1972); *Matthews v. Pound*, 403 S.W.2d 7 (Ky.1966). In contrast, clarifying the extent of the OAG's authority to investigate criminal activity throughout the Commonwealth presents an issue of first impression. In clarifying this novel issue, KRS 15.010, 15.150 and 15.700 prove instructive. It is first necessary, however, to briefly discuss KRS 15.020 and 15.200, as these are the two statutes the Court of Appeals primarily relied on in arriving at its determination.

Pursuant to KRS 15.020, the Attorney General is "the chief law officer of the Commonwealth of Kentucky ... and shall exercise all common law duties and authority pertaining to the office of the Attorney General under the common law, except when modified by statutory enactment." KRS 15.020. The statute then lists the affirmative duties of the OAG in representing the Commonwealth before various courts and tribunals, "except where it is made the duty of the Commonwealth's attorney or county attorney to *represent* the Commonwealth." *Id.* (emphasis added); *see also* KRS 15.725(1)–(2) (discussing the duties of the Commonwealth's and County

Attorneys to prosecute all criminal violations before the district or circuit courts).

■ KRS 15.020 therefore reaffirms the common law authority of the OAG, stating that the General Assembly may modify such authority, and then proceeds to express one such limitation. However, the limitation provided in KRS 15.020 is one placed on the OAG's authority to *represent* the Commonwealth where that authority is instead vested with the County or Commonwealth's Attorneys. We construe the plain language here to refer to the OAG's authority to act on behalf of the Commonwealth in a prosecutorial capacity. KRS 15.020 has nothing to do with the investigative authority of the OAG, other than recognizing that which may have existed at common law.

Similarly, KRS 15.200(1) is an additional limitation on the prosecutorial authority of the OAG and states in pertinent part as follows:

> Whenever requested in writing by the Governor, or by any of the courts or grand juries of the Commonwealth, or upon receiving a communication from a sheriff, mayor, or majority of a city legislative body stating that his participation in a given case is desirable to effect the administration of justice and the proper enforcement of the laws of the Commonwealth, the Attorney General may intervene, participate in, or direct any investigation or criminal action, or portions thereof, within the Commonwealth of Kentucky necessary to enforce the laws of the Commonwealth.

KRS 15.200(1).

■ This provision provides a defined mechanism through which a nonexclusive list of certain executive, judicial, and local officials may request assistance from the OAG in the context of grand jury investigations and criminal trials. However, KRS 15.200 is superfluous in the context of investigatory requests or independent investigations initiated by the OAG. The Court of Appeals confused limits on the prosecutorial authority of the OAG with its authority to investigate matters outside of the courtroom or grand jury proceedings. Thus, at most, KRS 15.200 is a limit on both the Commonwealth Attorney's authority and the OAG's authority to prosecute cases at the trial level, but does not limit the independent investigatory authority of the OAG. *See Schroering,* 481 S.W.2d at 61; *Pound,* 403 S.W.2d at 10–11. Both *Schroering* and *Pound* addressed KRS 15.200 in the context of grand jury investigations and the OAG's role as prosecutor, not the authority of OAG peace officers to investigate crimes.

The Court of Appeals purports to have construed all applicable statutes together in an attempt to harmonize and give effect to the provisions of each. *See, e.g., Commonwealth ex rel. Conway v. Thompson,* 300 S.W.3d 152, 170 (Ky.2009); *Commonwealth v. Phon,* 17 S.W.3d 106, 108 (Ky.2000). Yet, that court focused its analysis almost exclusively on KRS 15.200. In interpreting this statute, the Court of Appeals actually engaged in a de facto application of *expressio unius est exclusio alterius*—a narrow rule of last resort. This maxim of statutory construction is often shortened to *expressio unius* and means that mention of one thing implies the exclusion of another. *Fox v. Grayson,* 317 S.W.3d 1, 9 (Ky.2010) ("[*E* ]*xpressio unius* is most helpful when there is a strong, unmistakable contrast between what is expressed and what is omitted."). Therefore, the Court of Appeals first erred in focusing primarily on KRS 15.200 and then erroneously created a negative implication from that statute.

*See Commonwealth v. Harrelson,* 14 S.W.3d 541, 546 (Ky.2000) ("We are not at liberty to add or subtract from the legislative enactment or discover meanings not reasonably ascertainable from the language used.").

### KRS 15.010, 15.150 and 15.700

The Generally Assembly has more recently addressed the role of the OAG in investigating crimes throughout the Commonwealth. *See* KRS 15.010, 15.150 and 15.700. For example, the most significant general expression of legislative intent regarding the OAG's investigative authority is revealed in KRS 15.700, which unequivocally states that the Attorney General is the "chief law enforcement officer of the Commonwealth." This statute became effective on January 1, 1978 as a part of the Unified Prosecutorial System that paralleled the creation of the Unified Court System.

 In analyzing KRS 15.700, we must consider that the "power granted by the statute is not limited to that which is expressly conferred but also includes that which is necessary to accomplish the things which are expressly authorized." *Strong v. Chandler,* 70 S.W.3d 405, 409 (Ky.2002). Thus, it is rudimentary that the authority to investigate crimes is a necessary and implicit means by which the OAG executes its statutory duty as the Commonwealth's chief law enforcement officer. *See Stilger v. Flint,* 391 S.W.3d 751, 754 (Ky.2013).

The legislative intent evidenced in KRS 15.700 is further buttressed by KRS 15.010, which authorizes the OAG to form a "Special Investigations Division." KRS 15.010(2)(c). Although the organization and appropriation of this division are not germane to the present case, the statute is instructive. Building on this legislative grant, KRS 15.150 provides that "[i]nvestigative personnel as designated by the Attorney General shall have the power of peace officers." KRS 15.150. The authority provided here has not been otherwise limited by the General Assembly and includes the authority to make arrests. *See id.;* KRS 446.010(31).

The Court of Appeals' opinion flies in the face of these statutes by holding that the Attorney General cannot use his legislatively authorized peace officers to investigate crimes unless formally requested to do so under KRS 15.200. Simply put, the investigative authority of the Commonwealth's chief law enforcement officer cannot be held hostage by KRS 15.200. Any interpretation to the contrary would achieve an illogical and absurd result. *See Maynes,* 361 S.W.3d at 924 (this Court presuming that the General Assembly did not intend an absurd result).

### *Common Law Authority*

The Commonwealth further argues that the OAG has the inherent authority under the common law to investigate crimes throughout the Commonwealth and that the General Assembly has not limited that authority.

 The Attorney General is a statewide constitutional officer who enjoys a rich history steeped in the common law. *See* Ky. Const. §§ 91 and 93; *Johnson v. Commonwealth ex rel. Meredith,* 291 Ky. 829, 165 S.W.2d 820 (1942). "[W]hen the office was created in Kentucky, it was contemplated that [the OAG] should have all the powers then recognized as belonging to it, *except so far as those powers were limited by statute." Id.* at 827 (emphasis in original); *see also* KRS 15.020.

This view comports with the general rule in the United States. *See* 7 Am.Jur.2d Attorney General § 6 (2013). Although the General Assembly may limit the authority of the OAG, which is a part of the executive branch of government, it may not remove the fundamental characteristics of the office, "so as to leave an empty shell." *Johnson*, 165 S.W.2d at 829; *see also Legislative Research Commission v. Brown*, 664 S.W.2d 907, 911–12 (Ky.1984) (discussing the Kentucky Constitution's express separation of powers provisions).

We have recently stated that "the AG's office is an investigatory body." *Stilger*, 391 S.W.3d at 754; *see also Commonwealth ex rel Ferguson v. Gardner*, 327 S.W.2d 947, 948–49 (Ky.1959) (noting that the OAG's authority to supervise the administration of certain trusts necessarily implies some authority to investigate). Further, we have recognized that the OAG's authority to investigate and review documents in the possession of the Cabinet for Economic Development to determine whether the parties had breached state incentive contracts. *Strong*, 70 S.W.3d at 410. In so holding, we recognized the "common sense concept of investigating before filing a suit[.]" *Id.* Other jurisdictions recognize similar investigatory authority. *See In re Shelley*, 332 Pa. 358, 2 A.2d 809, 812 (1938) (citations omitted) (common law authority of the Attorney General included the right to investigate criminal acts, as well as prosecute criminal cases); *In re Henry C. Eastburn & Son, Inc.*, 147 A.2d 921, 924 (Del.1959) (holding that the Attorney General's "power and duty to investigate, upon information received, possible violations of the criminal law is undoubted").

 In support of its argument, the Commonwealth has provided additional persuasive authority, including an intriguing history of the expansive role of the Attorney General harkening back to Elizabethan England. In our modern era, however, the OAG must adapt to what has become a much more complex and compartmentalized structure of law enforcement than existed at common law. Once an arm of the king, the Attorney General is now the people's servant. His or her agents and officers must continue to incorporate into our modern legal structure to the extent that the letter of the law and the spirit of pragmatism so require. The OAG's investigative authority is not plenary and must comport with relevant criminal and civil statutory directives. In other words, although such investigative power may no longer be in full Elizabethan plume, it is still a feather in the Attorney General's cap.

### *Private Citizen's Authority*

It is also noteworthy that the OAG investigators in this case merely did what a private citizen could have done. *See, e.g., Commonwealth v. Adkins*, 331 S.W.3d 260, 263–64 (Ky.2011); *Branzburg v. Hayes*, 408 U.S. 665, 674, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (holding that grand juries have a right to "every man's evidence"). They collected evidence and then brought that evidence to the attention of the Commonwealth's Attorney, resulting in an OAG officer testifying to that evidence under oath before a grand jury. However, the OAG officers did not arrest or otherwise detain Johnson, although they had the authority to do so.

It is irrelevant that the OAG investigators were state officials acting under the color of state law during the investigation and subsequent grand jury proceedings. Johnson does not argue, and the record

does not otherwise reflect, that the actions of these officers were abusive or violated any constitutional directives. The issue in this case is confined to jurisdiction and does not implicate any independent constitutional principle or protected right.

Moreover, this case involves a rather benign investigation in which the involvement of the OAG has never been challenged by local law enforcement officials, including the Commonwealth's Attorney. This is not a case of an intrusive state actor unlawfully usurping a local investigation or prosecution in a manner inconsistent with our constitutional or statutory framework.

### Conclusion

In sum, we hold that the OAG's jurisdiction referenced in KRS 218A.240(1) refers to the territorial boundaries of the Commonwealth of Kentucky. Therefore, KRS 218A.240(1) specifically vests the OAG with the authority to enforce and investigate drug crimes under that chapter throughout the Commonwealth.

For the foregoing reasons, we reverse the decision of the Court of Appeals and reinstate the judgment of the Powell Circuit Court.

All sitting. All concur.