Dwight Edward **FISCHER**, Appellant

v.

**COMMONWEALTH of Kentucky,**
Appellee

NO. 2014–CA–002094–MR

Court of Appeals of Kentucky.

DECEMBER 16, 2016

330

BRIEF FOR APPELLANT: Jerry L. Wright, Lexington, Kentucky

BRIEF FOR APPELLEE: Andy Beshear, Attorney General, Tami Allen Stetler, Assistant Attorney General, Frankfort, Kentucky

BEFORE: MAZE, TAYLOR AND VANMETER, JUDGES.

## OPINION

VANMETER, JUDGE:

Dwight Edward Fischer appeals the Fayette Circuit Court's denial of his motion to suppress statements made to Lexington police detectives outside their jurisdiction during the course of a knock and talk. For the following reasons, we affirm.

### I. Factual and Procedural Background.

This case arose from an incident which took place on June 15, 2013, when Fischer went to his grandmother's house in Lexington for a family gathering. During the family gathering, Fischer went upstairs alone with his four-year old second cousin and sexually assaulted her twice during the course of the evening. The child ultimately reported this assault to her par-

ents, and a police report was filed. The Children's Advocacy Center interviewed the child, who again made consistent allegations against Fischer.

The case was assigned to Detectives Hammond and Welch of the Lexington Police Crimes against Children Unit. Detectives Hammond and Welch drove to Fischer's home in Winchester, Kentucky, Clark County, to make initial contact with him. The detectives testified that their intent was to conduct a "knock and talk" with Fischer to gauge his willingness to speak with them. The detectives did not obtain an arrest warrant in either Fayette or Clark Counties prior to making contact with Fischer, did not have any cooperative agreements in Clark County that would extend their jurisdiction, and did not make any contact with Clark County law enforcement prior to the knock and talk.

The detectives parked Det. Hammond's unmarked SUV a few houses away from Fischer's residence, and walked up to the door and knocked. Fischer's then live-in fiancée answered the door, and Det. Hammond introduced himself as a Lexington police detective, and asked to speak with Fischer. The detectives then waited on the porch while she went back inside to get Fischer, who came to the door a few moments later. When Fischer came to the door, the detectives again identified themselves as Lexington police detectives, and told him they were investigating a case in which he was named. Det. Hammond asked Fischer if he would like to speak with them either in front of his house or in their car, to which Fischer responded that he would prefer to discuss this private matter in the detectives' car. One detective sat in the driver's seat, and the other in the rear passenger seat, with Fischer in the passenger seat. The detectives began asking Fischer general questions, informed him that the conversation was going to be recorded, and advised him of his *Miranda* rights, but also informed that he was not under arrest at the time; Fischer was not handcuffed and the vehicle doors were unlocked. Det. Hammond further testified that Fischer was not in custody during the conversation in the vehicle, but that he read Fischer his *Miranda* rights as a precaution since he knew he was outside his jurisdiction.

During the conversation, Fischer admitted to inappropriate contact with the victim, and told the detectives details about the incident consistent with the allegations made by the victim. During the conversation with the detectives, Fischer said several times that he knew what he did was wrong, and that he did not know why he would do this; he also thanked the detectives, stating that this incident had been weighing very heavily on his conscience, and talking to the detectives about the incident was a relief. The discussion in the detectives' car lasted thirty-seven minutes, about eight minutes of which is silence, during which Fischer was writing an apology note to the victim and her family. During the interview, the detectives never threatened Fischer or demanded a confession.

After the interview, the detectives asked Fischer if he would be willing to come to the Lexington Division of Police with them to further discuss this incident. Fischer asked if he would be arrested right away, and the detectives again informed him that he was not currently under arrest. Fischer testified that he did not think he would be arrested once he arrived in Lexington, but rather that he would be offered rehabilitative help. Fischer asked the detectives if he could have time to call his work to request time off, and the detectives informed him he would have enough time to talk with them before he had to report to work that evening. Fischer also asked if he

could speak with his fiancée about the incident, and the detectives requested that he go with them first since that conversation would probably take a substantial amount of time. Fischer then agreed to continue speaking to the detectives, and in fact, even asked for a ride to Lexington. The detectives agreed to give Fischer a ride to Lexington, and back home, and waited in the vehicle while Fischer went back inside to prepare to go to Lexington.

Fischer rode with the detectives to the Lexington Division of Police, and once there, the detectives gave Fischer his *Miranda* warnings again, which Fischer waived and agreed to speak with them. During this second interview, Fischer gave additional incriminating details and a second confession. He was then arrested, and subsequently indicted by a grand jury for two counts of sodomy in the first degree, victim under twelve years of age, and two counts of first degree sexual abuse, victim under twelve years of age.

Fischer, represented by counsel, initially entered a plea of not guilty. As the case proceeded towards trial, Fischer filed a motion to suppress both of his statements to the detectives based the Fayette County detectives' lack of jurisdiction to conduct any investigation in Winchester. The trial court held a hearing on the motion in February 2014, and heard evidence from Det. Hammond and Fischer, as well as the recording from the taped conversation in the detectives' vehicle. Following the hearing, argument, and briefs by both parties, in June 2014, the trial court entered an order denying Fischer's motion to suppress. The trial court found that "Fischer voluntarily entered the detectives' vehicle, answered their questions and travelled to Lexington and at no point did the detectives place Fischer in custody." Furthermore, the trial court found that at no point during this encounter with Fischer did the

detectives attempt to speak to him in a location beyond where the public has a right to be as required for a proper knock and talk.

After the trial court denied Fischer's suppression motion, he changed his plea to a conditional plea of guilty to one count amended charge of sodomy in the first degree, with no indication of the victim's age, and one count of first degree sexual abuse of a victim under twelve years of age, reserving the right to appeal from the denial of his suppression motion. Fischer was sentenced to a total of fifteen years' imprisonment. Fischer now appeals the denial of his suppression motion.

## II. Standard of Review.

In *Commonwealth v. Neal*, this court held,

[a]n appellate court's standard of review of the trial court's decision on a motion to suppress requires that we first determine whether the trial court's findings of fact are supported by substantial evidence. If they are, then they are conclusive. Based on those findings of fact, we must then conduct a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law.

84 S.W.3d 920, 923 (Ky. App. 2002). The appellant in a suppression case has the burden to demonstrate that the ruling of the trial court was clearly erroneous. *See Harper v. Commonwealth*, 694 S.W.2d 665, 668 (Ky. 1985) (overruled on other grounds by *Barnett v. Commonwealth*, 317 S.W.3d 49 (Ky. 2010)). Furthermore, "the trial court is the sole trier of facts and the exclusive judge of the credibility of the witnesses and of the weight to be given their testimony." *Henson v. Commonwealth*, 20 S.W.3d 466, 470 (Ky. 1999).

### III. Analysis.

Fischer makes two arguments on appeal. First, he argues that his statements made to the Lexington Police detectives during the knock and talk should be suppressed since the detectives lacked the proper authority because they were outside their jurisdiction, and their claim of performing a "knock and talk" is inappropriate and insufficient to cure the detectives' lack of jurisdiction. Second, Fischer argues that his second confession is not sufficiently attenuated from the wrongdoing of the Lexington police detectives to dissipate the taint, and thus that confession also should be suppressed.

### A. Jurisdiction of Knock and Talk

■ First, Fischer argues any statements made to the detectives outside his home should be suppressed because, since the detectives had no jurisdiction to speak with him, they were not in a place they had a right to be, and thus the knock and talk was improper. Fischer contends that the Lexington detectives were knowingly outside their jurisdiction when they went to Fischer's residence, and they were not within any recognized exception to the rule that a police officer may only exercise police authority in the geographical area he serves.

■ In order to review the denial of Fischer's motion to suppress, we must examine whether the trial court's findings of fact related to both the jurisdictional issue and the voluntariness of the knock and talk are supported by substantial evidence. The Kentucky Supreme Court formally recognized the legitimacy of the knock and talk procedure in *Quintana v. Commonwealth*, 276 S.W.3d 753, 755 (Ky. 2008), holding that it "may be used to investigate the resident of the property, provided the officer goes only where he has a legal right to be."[1] *Quintana* defined the knock and talk procedure as "involv[ing] law enforcement officers approaching a home for the purpose of obtaining information about a crime that has been committed, a pending investigation, or matters of public welfare." *Id.* at 756. The rule of a proper knock and talk is:

the officer who approaches the main entrance of a house has a right to be there, just as any member of the public might have. When a resident has no reasonable expectation to privacy if someone approaches his front door for a legitimate purpose, police officers may also so approach.

. . .

The crux of the validity of the knock and talk procedure is that it is a consensual encounter in a place where the officer, like the public, has a right to be. Just as no resident is required to answer his door or respond to questions when the general public comes calling, so it is with a police officer.... Moreover, as any member of the public can be told and required to leave the premises, so can an officer. Unless an officer has probable cause to obtain a warrant or exigent circumstances arise, the intrusion can go no further than the approach to the obvious public entrance of the house.

---

1. Although the application of the knock and talk procedure in *Quintana* focuses mostly on Constitutional rights regarding search and seizure under the Fourth Amendment, the validity of a knock and talk reasonably and presumably applies also to the Constitutional rights afforded by the Fifth Amendment.

Fischer does not allege that he was unconstitutionally seized, however, he argues that the interaction with the detectives was not consensual, thus implicating the voluntariness prong of *Quintana*, which is similar to a custodial interrogation analysis.

*Id.* at 758–59.[2]

██ Fischer argues that the instant case is distinguishable from *Quintana,* and that because the detectives were outside of their jurisdiction, they did not have a right to come to his residence at all. We disagree. Whether a police officer is outside his jurisdiction is not the consideration for whether a knock and talk is proper. Rather, the consideration is whether the officer was where a member of the public would have a right to be. When a police officer is acting outside his jurisdiction, he becomes akin to a member of the public. As held in *Quintana,* the public has a right to approach the front door of someone's home and ask if they would speak with them.

Detectives Hammond and Welch stood on the front steps of Fischer's home, and when Fischer came to the door, they asked if he would speak with them. Merely knocking on Fischer's door does not exceed that which a member of the public could do; the detectives did not take the type of police action that would require jurisdiction, such as searching Fischer or his home, or arresting him. *See, e.g., Commonwealth v. Johnson,* 423 S.W.3d 718, 725–26 (Ky. 2014) (regarding an issue of OAG jurisdiction, holding "[i]t is also noteworthy that the OAG investigators in this case merely did what a private citizen could have done. . . . It is irrelevant that the OAG investigators were state officials acting under the color of state law during the investigation and subsequent grand jury proceedings."). We agree with the trial court that at no point during the encounter with Fischer did the detectives attempt to speak with him in a place beyond where the public has a right to be. The detectives did not need to be in their jurisdiction to conduct a knock and talk since they did not exceed that which a general member of the public could do.

### B. Voluntariness of the Knock and Talk

██ The next consideration in analyzing the propriety of a knock and talk is whether the interaction was consensual. Fischer argues that, although he agreed to speak with the detectives, he only did so because he did not feel free to refuse or to terminate the encounter. Fischer contends that this knock and talk was a veiled attempt to obtain an improper and involuntary confession from him. "[I]t is clear that any interaction between the police and the resident of a house in the course of a knock and talk must be consensual. . . . The means employed by the police in the course of the knock and talk procedure to obtain consent or interaction with the resident can also give rise to a [constitutional] violation and must be evaluated separately." *Quintana,* 276 S.W.3d at 758–59. A violation may arise if, during the course of the knock and talk, the officers employ a "coercive ruse" to obtain consent, or if the consensual encounter at the doorway evolves into a nonconsensual one if the officers "deploy overbearing tactics that essentially force the individual out of the home." *Id.*

██ Although Fischer did not argue he was unconstitutionally seized under the Fourth Amendment, we liken the analysis of the voluntariness prong of *Quintana* to the custodial interrogation analysis. As discussed by the trial court, in *Cecil v. Commonwealth,* the Kentucky Supreme Court held

The United States Supreme Court has identified factors that might suggest

---

2. "The knock and talk procedure must be distinguished from the 'knock and announce' procedure, which occurs only after obtaining a warrant, and is specifically intended to avoid injury to the officers or residents and unnecessary damage to private property when officers are serving the warrant." *Quintana,* 276 S.W.3d at 757, fn. 1.

that a seizure has occurred and that a suspect is in custody: the threatening presence of several officers; the display of a weapon by an officer; physical touching of the suspect; and the use of tone of voice or language that would indicate that compliance with the officer's request would be compelled. 297 S.W.3d 12, 16 (Ky. 2009) (citing *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). The test is whether, considering the surrounding circumstances, a reasonable person would have believed he or she was free to leave." *Baker v. Commonwealth*, 5 S.W.3d 142, 145 (Ky. 1999).

In this case, substantial evidence supports the trial court's holding that Fischer's encounter with the detectives was voluntary and consensual at all times. The trial court held that "Fischer voluntarily entered the detectives' vehicle, answered their questions, and at no point did the detectives place Fischer in custody." We agree. When Fischer met the detectives on the front porch of his home, after identifying themselves as Lexington detectives, the detectives asked if Fischer would mind speaking with them. The detectives did not display their weapons, physically seize Fischer, or exhibit any other display of authority. In fact, after voluntarily agreeing to speak with them, the detectives gave Fischer a choice of where to speak with them, and he chose the detectives' vehicle.

Furthermore, once inside the vehicle, he was informed he was not currently under arrest, and he sat in the front seat uncuffed with the vehicle doors unlocked. Fischer was additionally advised of his *Miranda* rights, which he indicated affirmatively that he understood, and again agreed to speak to the detectives voluntarily. At the end of the interview in the vehicle, Fischer was asked if he would mind meeting the detectives at the Division of Police in Lexington, to which he agreed, even asking if they would mind driving him. He then returned inside his home, unaccompanied, to prepare for the trip, and came back outside to the detectives' vehicle to accompany them to Lexington.

Once in Lexington, he was advised again of his *Miranda* rights, which he again waived, and agreed to continue speaking with the detectives. Fischer was arrested only after this second interview, during which he made a second confession with additional incriminating information. The trial court did not err in finding that this knock and talk was a voluntary encounter, nor did it err in holding that the detectives did not improperly coerce Fischer into speaking with them.

### C. Taint of Second Confession

Third, Fischer argues that both his first and second confessions are tainted by the illegality of the detectives' knock and talk. He contends that because the detectives were outside their jurisdiction, and that he was constructively in custody, the first confession is tainted; therefore, his second confession is also tainted without proper attenuation from the first. Fischer argues that both confessions should be suppressed because whether a confession comes from a voluntary act on the part of the defendant does not matter because "a voluntary act of an accused is insufficient to cure an otherwise unlawful acquisition of evidence." *Churchwell v. Commonwealth*, 843 S.W.2d 336, 339 (Ky. App. 1992).

As discussed above, we agree with the trial court that the knock and talk was proper and consensual, and statements made to the detectives should not be suppressed. Since the first confession is not tainted, we see no reason Fischer's second, voluntary confession prior to arrest should be suppressed.

## IV. Conclusion.

The trial court did not err in denying Fischer's motion to suppress. For the foregoing reasons, the order of the Fayette Circuit Court is affirmed.

ALL CONCUR.