RENDERED:  FEBRUARY 18, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0522-MR

CHRISTOPHER ALEXANDER POPE          APPELLANT


ON APPEAL FROM LINCOLN CIRCUIT COURT
v.          HONORABLE DAVID A. TAPP, JUDGE
NO. 18-CR-00152


COMMONWEALTH OF KENTUCKY          APPELLEE


**OPINION OF THE COURT BY JUSTICE HUGHES**

**<u>AFFIRMING</u>**

After a Lincoln County jury found Appellant Christopher Pope guilty of trafficking in a controlled substance (heroin) in the first degree, he pled guilty to being a persistent felony offender in the first degree (PFO I).  The jury recommended a twenty-year prison sentence and the trial court sentenced him accordingly.  Pope argues on appeal that the circuit court erred in two ways: 1) by denying his pretrial motion to either suppress the evidence from an undercover drug buy or dismiss the indictment for lack of jurisdiction, and 2) by admitting into evidence clearer copies of Snapchat messages than the ones provided to him in discovery.  Upon review, we affirm the Lincoln Circuit Court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Pope was indicted by a Lincoln County grand jury for trafficking in a controlled substance and being a first-degree PFO. The charges stemmed from Pope selling heroin to a confidential informant during a controlled buy. The controlled buy was arranged by deputies from the Boyle County Sheriff's Department who apparently anticipated that it would occur in Boyle County. However, when the buy was set in motion Pope told the confidential informant that he would not make the sale in Boyle County. Instead Pope instructed the informant to meet him at a fast-food restaurant in adjoining Lincoln County. The Boyle County deputies followed the informant to that location and surveilled the drug transaction. Notably, the deputies received prior verbal approval from the Lincoln County Sheriff's Department for their investigative activities in Lincoln County.

Pope communicated with the confidential informant via Snapchat. At one point, Pope instructed the informant to leave his vehicle unlocked when he went into the restaurant. When the informant met with Pope inside the restaurant, Pope told him that the heroin had already been placed in the glove compartment of his vehicle. The informant then paid Pope and returned to Boyle County.

The Boyle County deputies later testified that they surveilled the entire transaction. One officer observed Pope arrive, approach the passenger door of the informant's vehicle, and then enter the restaurant where he had a

2

discussion with the informant.  Afterward, the officers met the confidential informant in Boyle County where he gave them the purchased heroin.

Following the Lincoln County grand jury's indictment of Pope, a Boyle County officer arrested him in Boyle County.  As noted, a Lincoln County jury found Pope guilty of trafficking in a controlled substance, first degree and, following his guilty plea to the charge of PFO I, recommended a sentence of twenty years.  The trial court sentenced Pope accordingly and entered judgment.  Pope appeals as a matter of right.

Other facts pertinent to Pope's claims of error are set forth below.

## ANALYSIS

### I. The Circuit Court Properly Denied the Motion to Suppress and Motion to Dismiss Indictment.

Pope moved the circuit court to suppress the deputies' testimony and any evidence gathered by the Boyle County Sheriff's Department or, alternatively, to dismiss the indictment altogether on the grounds that the Boyle County deputies lacked jurisdiction to conduct an investigation in Lincoln County.  The circuit court denied both motions.  Generally, when reviewing a denial of a suppression motion, "we first review the trial court's findings of fact under the clearly erroneous standard." *Davis v. Commonwealth*, 484 S.W.3d 288, 290 (Ky. 2016).  Here, Pope does not challenge the circuit court's findings of fact, so we proceed directly to a de novo review of the circuit court's application of the law to the facts.  *Id.*  Upon review, we agree with the circuit court's ultimate conclusion of law that Pope's

3

jurisdictional argument fails and thus cannot be a legal basis for either suppression of the evidence or dismissal of the indictment. Moreover, even if Pope's jurisdictional challenge had merit, a motion to suppress, excluding the evidence, would not be the proper remedy.

Pertinently, the circuit court's findings of fact and conclusions of law stated:

> On or about September 1, 2018, the Boyle County Sheriff's Office conducted a controlled buy from the Defendant. The buy occurred in Lincoln County through the use of a confidential informant. The confidential informant was recording the transactions and the events were observed by the officers with the Boyle County Sheriff's Office. The Boyle County Officers received verbal authorization from [the Lincoln County Sheriff] before the transaction occurred to conduct an investigation. The Defendant was not arrested after the transaction but was instead directly indicted by the Lincoln County Grand Jury in January 2019.
>
> The defendant claims KRS 431.007 applies in this case. Since the Defendant was not arrested during the investigation, it does not apply.
>
> To the extent that any authority is need[ed] [by the Boyle County Officers] to act outside their jurisdiction . . . , it was granted by the Sheriff of Lincoln County. . . .
>
> The Kentucky Court of Appeals has held that officers have a right to be or act as any other private citizen. *Fischer v. Commonwealth*, 506 S.W.3d 329 (Ky. App. 2016). The jurisdictional issue is not an issue since all the actions performed by law enforcement and their proxy were the same actions any citizen could lawfully perform.

Pope primarily relies on Kentucky Revised Statute (KRS) 431.007(1) to support his argument that the Boyle County deputies did not have authority to conduct the investigation in Lincoln County which led to his indictment and arrest. KRS 431.007(1) provides:

4

> [A] sheriff, or deputy sheriff . . . who is officially requested by a law enforcement agency in another county in Kentucky to assist in any matter within the jurisdiction of the requesting agency shall possess, while responding to and for the duration of the matter for which the request was made, the same powers of arrest in the requesting county as he possesses in the county in which he is a police officer.

Pope stresses that pursuant to this statute's plain language and statutory interpretation principles, the Lincoln County Sheriff must have "requested" the Boyle County officers' assistance, not vice versa, in order for the Boyle County officers to have investigatory jurisdiction in Lincoln County. He contends the investigation and the evidence obtained from it are unlawful because they contravene the statute, regardless of the fact that the Boyle County officers requested permission from the Lincoln County Sheriff to pursue the undercover heroin buy in Lincoln County. He also argues *Fischer,* a case relied on by the circuit court, is distinguishable from his case because in contrast to the police officers' out-of-county "knock and talk" at issue in that case, an undercover drug buy is not an action that any private citizen can lawfully undertake.

The Commonwealth counters Pope's statutory interpretation argument by pointing to other plain language in the statute. On its face, KRS 431.007 simply grants a deputy the powers of arrest in a different county after that county has requested his assistance, making it inapplicable to this case since the Boyle County officers did not arrest Pope in Lincoln County. The Commonwealth also argues that the statute places no limitations on investigations conducted in other counties. Lastly, the Commonwealth contends that just as the officers' actions in *Fischer*–driving to an adjacent

5

county, knocking on a door and talking to a suspect–did not go beyond what a general member of the public might do, neither did the Boyle County officers' actions in this case. Citing *Commonwealth v. Johnson*, 423 S.W.3d 718, 725-26 (Ky. 2014), the Commonwealth emphasizes that the Boyle County deputies did not perform any active police work like stopping, searching, or arresting Pope while in Lincoln County. Instead, they simply followed the confidential informant to the exchange location and observed him with Pope, actions any private citizen could have taken. Even their subsequent testimony to the grand jury was nothing beyond what a private citizen could do, i.e., testifying to factual observations.

We agree with the circuit court's conclusion of law that KRS 431.007 does not apply in this case. KRS 431.007 grants an out-of-county assisting officer the authority to arrest. It does not bestow any right on a defendant to be prosecuted for breaking the law only when the investigation leading to his arrest was performed by an officer of the jurisdiction within which that defendant committed the crime. Further, to the extent the Boyle County officers needed permission for their out-of-county surveillance activities, the Lincoln County Sheriff's Department granted authority for that investigation. *See* KRS 218A.240(1).[1] In short, Pope's jurisdiction argument is without any apparent basis in Kentucky law.

---

[1] Although KRS 218A.240(1)'s application is not directly at issue in this case, as *Johnson* states, "It is abundantly clear that KRS Chapter 218A is a comprehensive effort on behalf of the General Assembly to quell the drug epidemic plaguing our Commonwealth." 423 S.W.3d at 722. Thus, KRS 218A.240(1) pertinently provides that the identified officers and agencies "within their respective jurisdictions, shall

In *Johnson,* we also dealt with law enforcement officers' use of a confidential informant to make a controlled drug buy and an ensuing motion to suppress premised on a violation of a statute governing investigatory jurisdiction. That case addressed the jurisdictional authority of state and local officers enforcing controlled substances laws, KRS 218A.240(1), and its intersection with the jurisdictional authority of the Attorney General under KRS 15.200. In particular this Court addressed whether under KRS 218A.240(1) the Attorney General had statewide investigatory jurisdiction. KRS 218A.240(1) provides:

> All police officers and deputy sheriffs directly employed full-time by state, county, city, urban-county, or consolidated local governments, the Department of Kentucky State Police, the Cabinet for Health and Family Services, their officers and agents, and of all city, county, and Commonwealth's attorneys, and the Attorney General, within their respective jurisdictions, shall enforce all provisions of this chapter and cooperate with all agencies charged with the enforcement of the laws of the United States, of this state, and of all other states relating to controlled substances.

In *Johnson,* the Attorney General (OAG) worked with Operation Unite, a federally-funded task force that works closely with state and local law enforcement personnel, to investigate drug-related crimes. The OAG and Operation Unite investigators used a confidential informant to conduct controlled buys from Johnson in Powell County. No local law enforcement officer or entity participated in the investigation prior to initiating the grand

---

enforce all provisions of this chapter and *cooperate with all agencies* charged with the enforcement of the laws of the United States, of this state, and of all other states relating to controlled substances." (Emphasis added.) Here, Pope was indicted and found guilty under KRS 218A.1412.

jury proceedings. In an appearance before the Powell County grand jury, the OAG investigator presented testimony and video recordings detailing Johnson's involvement in drug buys in that county. The grand jury's charges against Johnson included three counts of first-degree trafficking in a controlled substance (morphine and oxycodone), second offense. Like Pope in the instant case, Johnson moved to suppress the evidence and to dismiss the indictments, arguing that the OAG officers did not have jurisdiction to conduct the investigation because local law enforcement in Powell County did not request that the OAG participate in an investigation. Johnson relied upon KRS 15.200 to support this argument. 423 S.W.3d at 720.

> KRS 15.200(1) provides:
>
> Whenever requested in writing by the Governor, or by any of the courts or grand juries of the Commonwealth, or upon receiving a communication from a sheriff, mayor, or majority of a city legislative body stating that his participation in a given case is desirable to effect the administration of justice and the proper enforcement of the laws of the Commonwealth, the Attorney General may intervene, participate in, or direct any investigation or criminal action, or portions thereof, within the Commonwealth of Kentucky necessary to enforce the laws of the Commonwealth.

The trial court denied Johnson's motions, having concluded that KRS 218A.240(1) provided the OAG–a statewide official with statewide jurisdiction– clear authority to make arrests regarding controlled substances. 423 S.W.3d at 720. The Court of Appeals reversed the trial court's decision because it concluded that KRS 15.200 was the controlling statute and its directives were not met, i.e., the OAG had not been requested to participate in drug enforcement activities by Powell County officials. *Id.* On discretionary review,

8

this Court reversed the Court of Appeals, holding that KRS 218A.240(1) vested the OAG with statewide investigatory jurisdiction regarding enforcement of controlled substances laws. *Id.* at 722, 726.

After concluding our statutory jurisdiction analysis in *Johnson*, we also analyzed the OAG's investigative authority as if they–the office and its investigators–were private citizens. *Id.* at 725-26. Although arguably dicta given that the issue was fully decided based on the statute, we further stated:

> It is also noteworthy that the OAG investigators in this case merely did what a private citizen could have done. *See, e.g., Commonwealth v. Adkins*, 331 S.W.3d 260, 263-64 (Ky. 2011); *Branzburg v. Hayes*, 408 U.S. 665, 674, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (holding that grand juries have a right to "every man's evidence"). They collected evidence and then brought that evidence to the attention of the Commonwealth's Attorney, resulting in an OAG officer testifying to that evidence under oath before a grand jury. However, the OAG officers did not arrest or otherwise detain Johnson, although they had the authority to do so.

*Id.* at 725.

This portion of *Johnson* comparing an officer's activities to that of an ordinary private citizen was cited in support of the Court of Appeals' conclusion in *Fischer*, 506 S.W.3d at 329. In that case, officers from the Lexington Police Crimes Against Children Unit, went to the suspect's home in adjoining Clark County to conduct a "knock and talk." The appellate court found that the officers' conduct fit within the contours of a proper "knock and talk" as outlined in *Quintana v. Commonwealth*, 276 S.W.3d 753 (Ky. 2008), emphasizing that officers were where any member of the public had a right to be, the main entrance to the suspect's home, and engaged in activity that any

9

citizen could, namely knocking on the door and asking questions. *Fischer*, 506 S.W.3d at 334-35. "Merely knocking on Fischer's door does not exceed that which a member of the public could do; the detectives did not take the type of police action that would require jurisdiction such as searching Fischer or his home, or arresting him." *Id.* at 335. The *Fischer* Court quoted a portion of *Johnson* that noted that it is irrelevant whether law enforcement officers are acting "under the color of state law" if the activities they engage in are nothing more than what an ordinary citizen could do. *Id.* (citing *Johnson*, 423 S.W.3d at 725-26). In that vein, the Court of Appeals concluded: "When a police officer is acting outside his jurisdiction, he becomes akin to a member of the public." *Id.*

We concur with the *Fischer* analysis but find the factual scenario before us sufficiently different to merit further discussion. Whereas the officers in *Fischer* simply engaged in an out-of-county conversation with a suspect, the officers in this case set in motion an undercover drug buy that ultimately took place outside their jurisdiction. The undercover operation was planned in Boyle County and culminated there when the deputies met up with the confidential informant to recover the heroin. While it could be argued that the only activity the Boyle County deputies engaged in in Lincoln County was observing two men interact at a restaurant, the kind of observation any private citizen could make, it is undisputed that the confidential informant was at the restaurant to conduct an illegal drug transaction solely because the Boyle County deputies recruited him for that purpose. In short, there would have

10

been nothing for the deputies or a private citizen to observe but for the Boyle County-based law enforcement investigatory activities that preceded the drug transaction.[2] So, the absence of overt police activity in Lincoln County, such as a police search or arrest as referenced in *Fischer*, is less compelling in this case.

Ultimately, we conclude that comparison of the deputies' conduct to that of a private citizen is unnecessary because their investigatory activity fits squarely within the language of KRS 218A.240(1), the focus of our *Johnson* holding. That statute instructs state and local law enforcement officials to enforce within their respective jurisdictions all state and local laws relating to controlled substances and "to cooperate with all agencies charged with the enforcement of [those] laws." That is precisely what occurred here. The sheriff departments in Boyle and Lincoln Counties cooperated, with the Boyle County deputies properly receiving verbal authorization from the Lincoln County Sheriff's Department before proceeding with the controlled buy at a Lincoln County restaurant. Thus, Pope's argument that the deputies' activities were

---

[2] As noted above, *Johnson* similarly involved controlled buys and the Court found the OAG officers' activity akin to that of a private citizen: "They collected evidence and then brought that evidence to the attention of the Commonwealth's Attorney, resulting in an OAG officer testifying to that evidence under oath before a grand jury." 423 S.W.3d at 725. While we agree with the principle that extra-jurisdictional activity by a law enforcement official may be assessed from the viewpoint of what a private citizen could do, the application of that principle to controlled buys is problematic. Those orchestrated criminal acts are qualitatively different from having a conversation on someone's doorstep or collecting evidence that happens to come to a citizen's attention, such as finding a discarded knife on the sidewalk or taking photographs of the constant traffic at a suspected drug house in the neighborhood. Controlled buys exceed the concept of simply collecting evidence.

11

extra-jurisdictional and unauthorized is legally wrong, leaving both his motion to suppress and his motion to dismiss without a factual or legal foundation.

Given the all-too-often misuse of a motion to suppress as the procedural vehicle to address an alleged statutory violation, we are compelled to reiterate prior holdings. In *Copley v. Commonwealth*, 361 S.W.3d 902, 905 (Ky. 2012), we stated: "Suppression of evidence pursuant to the exclusionary rule applies only to searches that were carried out in violation of an individual's constitutional rights."[3] The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures and its application "depends on whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (citations omitted). "Official conduct that does not 'compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment." *Illinois v. Caballes*, 543 U.S. 405, 408–09 (2005). Furthermore, we have previously explained, "evidence obtained in violation of a state statute will not be excluded unless it involves a violation of constitutional rights or the legislature mandates exclusion." *Easterling v. Commonwealth*, 580 S.W.3d 496, 502 (Ky. 2019) (citing *Beach v. Commonwealth*, 927 S.W.2d 826 (Ky. 1996)).

---

[3] *Copley*, 361 S.W.3d at 907, recognized that evidence may be excluded when criminal procedure rules are violated, stating, "[W]hen a criminal procedure rule is violated but the defendant's constitutional rights are not affected, suppression may still be warranted if there is (1) prejudice to the defendant, in the sense that the search might not have occurred or been so abusive if the rule had been followed or (2) if there is evidence of deliberate disregard of the rule."

12

Pope's motion to suppress and his argument before this Court are void of any explanation as to how the Boyle County deputies violated his constitutional rights. *See Johnson*, 423 S.W.3d at 725-26. Moreover, the statute he relies on, KRS 431.007, even if applicable in this case (and we have concluded it is not) contains no explicit directive for exclusion of evidence. *See Easterling*, 580 S.W.3d at 502. As in *Johnson*, 423 S.W.3d at 726, "the issue [here] is confined to jurisdiction," an issue we have resolved in favor of the Commonwealth. And because the facts before us "[do] not implicate any independent constitutional principle or protected right," *id.*, the suppression remedy Pope seeks is not available to him. For this additional reason, we affirm the trial court's denial of the motion to suppress.

## II. The Circuit Court Properly Denied the Motion to Continue and Properly Admitted the Better-Quality Copies of the Snapchat Messages.

Prior to the controlled buy, Pope and the confidential informant communicated via Snapchat messages. On the day of the drug buy, Pope directed the informant to meet him inside the designated Lincoln County restaurant, and to "unlock ur moms car." The Commonwealth provided digital black and white copies of these Snapchat messages to Pope during discovery. At trial, before introduction of the messages into evidence, the Commonwealth learned, and subsequently informed Pope, that color copies of the same messages had just been obtained from the Boyle County deputy. These copies were of better quality than the previously produced black and white copies. Pope immediately complained about the last-minute production of the clearer

13

copies.[4]  Upon comparison of the black and white copies with the color copies, only a one-word difference was apparent.  Specifically, the word "unlock" appeared in the clearer, color copy of the messages, but was illegible in the copy Pope had received in discovery.

Pope moved the circuit court to continue the trial for three days,[5] alleging that the one-word difference in the Snapchat copies undermined his defense.  Because Pope could have requested a more legible copy before trial and was unable to provide a meaningful explanation for how his defense was undermined or how he was otherwise prejudiced, the circuit court denied the three-day continuance.  The court did, however, allow Pope and his counsel extra time to discuss the matter before the trial resumed.  Subsequently, when the Commonwealth moved to admit the color copies of the messages, Pope maintained his previous objection.  The circuit court allowed the Commonwealth to introduce the clearer copies of the Snapchat messages into evidence.

Pope claims on appeal that the trial court erred by admitting into evidence the color copies of the Snapchat messages.  Citing *Chestnut v. Commonwealth*, 250 S.W.3d 288 (Ky. 2008) and *Grant v. Commonwealth*, 244 S.W.3d 39 (Ky. 2008), he argues that the trial court abused its discretion

---

[4] He first moved for dismissal of the indictment based on prosecutorial misconduct due to the deputy withholding the clearer copy.  That motion was denied.

[5] Pope initially sought a one-day continuance but that was not possible with the trial court's schedule, so he requested three days.

14

because his black and white copies from discovery did not contain the full phrase "**unlock** ur moms car," and his defense was prepared based upon those documents, not the color copies produced "at the last minute." Pope relies on this rationale to support his claim that he was substantially prejudiced by the trial court denying his motion to continue and later overruling his objection to the introduction of the messages into evidence. The standard of review for both claims of error is abuse of discretion. *Snodgrass v. Commonwealth*, 814 S.W.2d 579, 581 (Ky. 1991) (motion to continue); *Lopez v. Commonwealth*, 459 S.W.3d 867, 873 (Ky. 2015) (evidentiary ruling).

A trial court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). When considering a motion to continue, the trial court should consider the totality of the circumstances, which would include factors such as length of delay; previous continuances; inconvenience to litigants, witnesses, counsel and the court; whether the delay is purposeful or is caused by the accused; availability of other competent counsel; complexity of the case; and whether denying the continuance will lead to identifiable prejudice. *Snodgrass*, 814 S.W.2d at 581. "Identifiable prejudice is especially important. Conclusory or speculative contentions that additional time might prove helpful are insufficient. The movant, rather, must be able to state with particularity how his or her case will suffer if the motion to postpone is denied." *Bartley v. Commonwealth*, 400 S.W.3d 714, 733 (Ky. 2013) (citation omitted).

15

Here, just as when queried by the circuit court, Pope offers no more than a general argument that his defense strategy premised on the documents provided in discovery was undermined by the last-minute production of the clearer copies of those same Snapchat messages. Unlike the cases Pope cites, this is not a case in which the Commonwealth withheld evidence. The Commonwealth provided copies of the relevant messages in discovery. Later, as soon as the Commonwealth learned that clearer copies of the messages were available, Pope was informed and new copies were provided to him. Furthermore, prior to the admission of the messages as exhibits, the jury heard testimony from the confidential informant that Pope told him to leave the car unlocked and testimony from a Boyle County deputy that that he observed Pope approach the passenger side of the informant's car before entering the restaurant.

Pope does not articulate how the word "unlock" missing from the phrase "unlock your moms car" gutted his defense, *see Chestnut*, 250 S.W.3d at 299, or prevented him from making an informed decision as to trial strategy, *see Grant*, 244 S.W.3d at 44. Given Pope's failure to explain specifically how he was prejudiced by the clearer copies of the messages being admitted into evidence or why those copies necessitated a continuance, we must conclude that the trial court did not abuse its discretion by denying his motion to continue or overruling his objection to admission of the clearer copies into evidence.

16

## CONCLUSION

For the foregoing reasons, we affirm the Lincoln Circuit Court's final judgment and sentence.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Cullen Cole Gault
Gault Law Office

COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

Kristin Leigh Conder
Assistant Attorney General